BENTON *et al.* v. PITTARD, commissioner, *et al.*

No. 14860. JULY 6, 1944.

*M. F. Adams*, for plaintiffs. *W. H. Key*, for defendants.

BELL, Chief Justice. "A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." Code, § 72-101. That which the law authorizes to be done, if done as the law authorizes, cannot be a nuisance. *Burrus* v. *Columbus*, 105 *Ga*. 42, 46 (31 S. E. 124) ; *City Council of Augusta* v. *Lamar*, 37 *Ga. App*. 418 (2) (140 S. E. 763). Accordingly, equity will not enjoin, as a nuisance *per se*, any act, business, or structure, which is not a nuisance at all times and under all circumstances, regardless of location or surroundings; nor will it enjoin, as a nuisance *per accidens*, any act, business, or structure which does not become a nuisance by reason of the particular manner of its operation, or because of its location and surroundings. *Simpson* v. *DuPont Powder Co.*, 143 *Ga*. 465, 466 (85 S. E. 344, L. R. A. 1915E, 430) ; *Warren Co.* v. *Dickson*, 185 *Ga*. 481, 484 (195 S. E. 568) ; *Asphalt Products Co.* v. *Beard*, 189 *Ga*. 610 (7 S. E. 2d, 172).

A thing that is lawful and proper in one locality may be a nuisance in another. In other words, a nuisance may consist merely of the right thing in the wrong place, regardless of other circumstances. "If one do an act, of itself lawful, which, being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do that act where it will not be injurious or offensive. . . To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfort-

able." *Coker* v. *Birge,* 9 *Ga.* 425, 428 (54 Am. D. 347). See also, 39 Am. Jur. 289, 306, 323, 325, §§ 11, 25, 43, 44. The test, of course, is whether the act or thing complained of would be offensive to persons of ordinary feelings and sensibilities, and not those of fastidious taste or temperament. Code, § 72-101.

In this case, the plaintiffs alleged that the defendant county commissioners proposed to establish and operate a clinic for the treatment of venereal diseases in a building which had been formerly occupied as a dwelling house and had never been used for any other purpose; that this building is within fifty feet of the home and residence of the plaintiffs, in a distinctly residential section; that, in the operation of said clinic, from two hundred to three hundred persons are treated weekly, and it is usual that forty to fifty of such diseased persons congregate in and around the building, and on the sidewalks, while awaiting treatment; that the diseases are not only communicable, but are offensive, obnoxious, and disgusting; that the operation of said clinic will be offensive to petitioners, their sensibilities will be injured, and their dwelling will be rendered less valuable as a home and place of residence.

While it may appear from the petition that the proposed clinic is to be operated as a public institution, this fact alone would not necessarily prevent it from being a nuisance if located in a residential section. "Syphilis, gonorrhoea, and chancroid, hereinafter designated as venereal diseases, are hereby declared to be contagious, infectious, communicable, and dangerous to the public health." Code, § 88-501. "State, county, and municipal health officers or their authorized deputies within their respective jurisdictions are hereby directed and empowered, when in their judgment it is necessary to protect the public health to make examination of persons infected or suspected of being infected with venereal diseases, to require persons infected with venereal disease to report for treatment to a reputable physician and continue treatment until cured or to submit to treatment provided at public expense, and to isolate persons infected or reasonably suspected of being infected with venereal disease." § 88-503. See also chapter 88-2, providing for the establishment of county boards of health and for the payment of the expense out of the county treasury. The clinic would thus presumably be open for treatment of persons of all classes, without distinction, provided only they are afflicted with venereal disease.

Therefore, seemingly, its public character would tend to make it even more objectionable, in such a locality. The mere general power to establish and operate a public-health clinic would not include authority to ignore private rights in selecting a location. Birchard v. Board of Health, 204 Mich. 284 (169 N. W. 901, 4 A. L. R. 990).

While it may not be easy to discover any very clear line of demarcation between what particular things may, and what may not, be condemned as a nuisance, it should be remembered that cases of this general class usually stand or fall upon their own particular facts; and we are not aware of any case exactly like the present. See, in this connection, 39 Am. Jur. 298, § 16. We have examined the cases relied on by the defendant in error, and numerous others, and find that none involved the right to establish a public clinic for the treatment of venereal diseases in a distinctly residential section. Nor do we think that there is any general principle to sustain the view that the petition here did not state a cause of action. On the other hand, we are of the opinion that the allegations of the petition were sufficient to show that the operation of the clinic in such locality would naturally give substantial offense to persons of ordinary and reasonable sensibilities residing in such community, and that it was error to sustain the general demurrer and dismiss the petition. Compare *City of Quitman* v. *Underwood,* 148 *Ga.* 152 (96 S. E. 178); *Giles* v. *Rawlings,* 148 *Ga.* 575 (97 S. E. 521); *Morrison* v. *Slappey,* 153 *Ga.* 724 (113 S. E. 82); *Harris* v. *Sutton,* 168 *Ga.* 565 (148 S. E. 403); *McGowan* v. *May,* 186 *Ga.* 79 (196 S. E. 705). See also cases cited and discussed in 4 A. L. R. 995.

While the case of *Bacon* v. *Walker,* 77 *Ga.* 336, would tend quite strongly to the contrary view, it is not controlling. In that case, the plaintiffs sought an injunction to restrain county commissioners from erecting a new jail near the complainants' residences. The court refused an injunction and afterwards dismissed the petition. The judgment was affirmed by this court, and in the opinion it was stated that a jail is a public necessity, and must be built in some part of the city and near somebody's house. The cases are not identical on their facts, however, and there may be a difference with respect to the repulsive elements involved. At any rate, we are not inclined to extend the rulings in the *Bacon* case so as to

hold that the petition in the instant case did not allege a cause of action.

*Judgment reversed. All the Justices concur, except Duckworth and Atkinson, JJ., who dissent.*