S98A1403. SUPERIOR FARM MANAGEMENT, L.L.C. et al.
v. MONTGOMERY et al.
(513 SE2d 215)

HINES, Justice.

This is an appeal from the grant of an interlocutory injunction halting the construction of a 1,345-acre commercial hog breeding facility in Taylor County. Temporary and permanent injunctive relief was sought by nearby residential property owners following their complaint for abatement of a nuisance pursuant to OCGA § 41-2-4.[1] For the reasons which follow, we affirm.

Plaintiff property owners, Montgomery et al., filed this action against N. G. Purvis Farms, Inc., which owns and operates several

---

[6] See ABA Standards for Criminal Justice, Standard 4-3.4.

[1] OCGA § 41-2-4 provides:
Where the consequence of a nuisance about to be erected or commenced will be irreparable damage and such consequence is not merely possible but to a reasonable degree certain, an injunction may be issued to restrain the nuisance before it is completed.

large hog farms in North Carolina; Superior Farm Management L.L.C., an entity owned by members of the Purvis family, and which would own and operate the proposed Taylor County facility; J. Morey and Associates, a real estate development firm participating in site location; and B&B Properties and its co-owners, Barrow and Byrd, involved in the site sale. Plaintiffs, whose properties are within one-half mile of the proposed site, alleged that operation of the hog facility would result in groundwater and aquifer contamination as well as impairment of air quality.

The Superior Court of Taylor County found, after stating it had considered the admissible evidence, that plaintiffs proved to a reasonable degree of certainty that there was a substantial threat that they would be irreparably damaged, hurt, inconvenienced, or injured by defendants' construction of the proposed swine facility, and that it was a clear and urgent case in which plaintiffs had no adequate remedy at law. The court further found that the admissible evidence formed a reasonable basis for believing that plaintiffs would prevail on the merits. It enjoined Superior Farm Management and the other defendants from taking any further action with regard to the physical construction of the proposed facility, including the sale of any property from or to any defendant for the purpose of constructing the project. However, the injunction did not prohibit defendants from continuing in the planning of the facility or from seeking a permit from the Environmental Protection Division of the Georgia Department of Natural Resources.

The court also refused to dismiss defendants B & B Properties, Barrow, Byrd, and J. Morey and Associates, based on the claim that their participation does not directly result in the alleged nuisance.

1. Appellants contend that the issuance of the interlocutory injunction was unwarranted because the hog farm is not constructed but merely proposed, and there can be no nuisance when there is no farm. However, OCGA § 41-2-4 expressly provides for the issuance of an injunction to restrain a nuisance before completion, in order to avert what is shown to be irreparable damage.

In this case, the plaintiff property owners elicited testimony from Superior Farm Management's general manager that the proposed facility could house approximately 22,800 hogs at any one time; that the consequent massive volume of feces and urine and other waste would drain into a concrete pit under each building, then into anaerobic and aerobic lagoons where the waste would be broken down, and finally the liquified mixture would be pumped to and distributed over various spray fields; that the lagoons would attract some insects; that the structures housing the hogs, the holding pits under the houses, the lagoons, and the animals themselves have unpleasant odors; that on a daily basis, people within a half mile of

the facility would smell the odors; and that several times a year the stench would extend to two to three miles away. The manager acknowledged that Superior Farm Management and its owner, Purvis, wanted to locate the proposed swine operation in North Carolina but could not because of Purvis' track record in managing certain of his eleven hog facilities in North Carolina; the manager knew that one of the North Carolina farms had been closed because of certain environmental incidents, namely fecal and urine sludge being washed by rain into a creek and polluting it, allowing an impermissibly high level of effluent in the holding lagoon, and losing through a hole in a pipe from 3,000 to 4,000 gallons of effluent which polluted a creek, killing fish. In this regard, plaintiffs introduced evidence of litigation between the State of North Carolina and N. G. Purvis Farms, Inc. Earlier, the manager had opined that the Taylor County farm would be operated along guidelines similar to those utilized by Purvis at the North Carolina facilities.

Plaintiffs also presented the testimony of an expert environmental engineer and geochemist, who works with organic waste disposal, that certain irritant and foul smelling gasses would be produced by the lagoons, and that, to a reasonable degree of scientific certainty, waste from the facility would infiltrate and contaminate groundwater at and around the site.[2]

The evidence was sufficient to authorize the superior court, sitting as the arbiter of fact, to find that the construction and operation of the proposed hog breeding facility would, with reasonable certainty, constitute a nuisance causing the plaintiffs irreparable harm. This is in contrast to the situations in *Powell v. Garmany*, 208 Ga. 550 (67 SE2d 781) (1951) and *Collins v. Lanier*, 201 Ga. 527 (40 SE2d 424) (1946), cited by appellants; in those cases, the perceived injuries were so speculative as to constitute the mere apprehension of damage.

> While mere apprehension of injury and damage is insufficient, where it is made to appear with reasonable certainty that irreparable harm and damage will occur from the operation of an otherwise lawful business amounting to a continuing nuisance, equity will restrain the construction, maintenance or operation of such lawful business. [Cits.]

*Camp v. Warrington*, 227 Ga. 674 (2) (182 SE2d 419) (1971).

Appellants counter that equity is not needed to protect the prop-

---

[2] Contrary to appellants' contention that the expert based his opinion solely on "old plans" for the facility, the hearing transcript reveals that the expert was aware of the proposed modifications.

erty owners because of the protection of state environmental laws. But, such laws do not attempt to alter general rules of law with regard to private nuisances and will not aid or impede a private individual in an action to enjoin a nuisance. *Galaxy Carpet Mills v. Massengill,* 255 Ga. 360, 361 (2) (338 SE2d 428) (1986).

> [A] thing that is lawful and proper in one locality may be a nuisance in another. In other words, a nuisance may consist merely of the right thing in the wrong place, regardless of other circumstances. . . . "To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable."

*May v. Brueshaber,* 265 Ga. 889 (466 SE2d 196) (1995), quoting *Benton v. Pittard,* 197 Ga. 843, 845-846 (31 SE2d 6) (1944).

2. Appellants are likewise unsuccessful with the claim that the superior court erred in considering irrelevant and prejudicial evidence when it allowed the testimony of two individuals living near large hog farm facilities. In a non-jury setting, a court may exercise broader discretion in admitting evidence than it would when a jury is involved. See *Davis v. State,* 189 Ga. App. 412 (376 SE2d 421) (1988); *Dowling v. Jones-Logan Co.,* 123 Ga. App. 380, 382 (3) (181 SE2d 75) (1971). More significantly, that these other facilities may have some size, structural or operational variations from the one proposed for Taylor County was known to the superior court and goes to the weight to be accorded the evidence. Any such differences did not negate the relevance of the first-hand accounts of the impact from a large scale hog farm on the enjoyment and quality of life of nearby residents.

3. Lastly, it was not error for the superior court to deny the motion to dismiss the real estate defendants. Their conduct was integral in the proposed sale and preparation of the site for construction and operation of the hog facility. What is more, the interlocutory injunction is tailored to prohibit defendants from taking action on the property *only* with regard to the physical construction of the facility in question, and therefore, is not subject to the charge of being overbroad. See *Essex Group v. Southwire Co.,* 269 Ga. 553, 557 (2) (501 SE2d 501) (1998). There is no bar to other dealings involving the property.[3]

*Judgment affirmed. All the Justices concur.*

---

[3] At oral argument before this Court, it was disclosed that there had been a conveyance of the real property subsequent to issuance of the interlocutory injunction.

DECIDED MARCH 8, 1999.

*Lovick P. Anthony, Jr., Groover & Childs, Denmark Groover, Jr.,*
*Walker, Hulbert, Gray & Byrd, Charles W. Byrd, McNatt, Greene &*
*Thompson, Hugh B. McNatt,* for appellants.
*Salter, Shook & Craig, Mitchell M. Shook, Tommy J. Smith,* for
appellees.