## A04A1696. PAYNE et al. v. TERRELL et al.

(604 SE2d 551)

ELDRIDGE, Judge.

Barbara Payne and several of her relatives and neighbors ("plaintiffs") brought a nuisance action against Louise and William Terrell ("defendants") to enjoin the construction of four large commercial poultry houses next to plaintiffs' properties. Following a bench trial in the Superior Court of Franklin County, judgment was entered for the defendants, and plaintiffs appeal therefrom. Because it appears the trial court failed to follow the legal criteria set forth in the Supreme Court of Georgia case of *May v. Brueshaber*[1] in determining the existence of a nuisance, we reverse.

Defendants contracted with ConAgra, a large poultry enterprise which conducts business in Franklin County, to erect the four commercial poultry houses at a specific location on their 77-acre property immediately next to Highway 320 near Toccoa. The trial court's findings of fact showed, that, following ConAgra's specifications for modern poultry houses, defendants cut down trees on the land and put down four adjacent cement pads on which to build the proposed houses. The four poultry houses would have a capacity of 100,000 chickens, and defendants intended to raise 5.5 flocks, for a total of 550,000 chickens per year. Each of the four proposed poultry houses would produce 1.1 million pounds of manure yearly, and 177,390 pounds of ammonia would be released into the air yearly. The closest plaintiffs' house is 450 feet from the proposed poultry houses and set back requirements require the proposed poultry houses to be farther away. In the geographic locale, the wind blows from the southwest to the northeast; the plaintiffs' properties are generally northeast of the proposed poultry houses; in addition, six 36″ exhaust fans in each proposed poultry house would exhaust toward the northeast and plaintiffs' properties. Medical testimony demonstrated that such exposure to poultry houses adversely affects the health and triggers asthma. Evidence showed that at least five of the plaintiffs would suffer asthmatic effects from exposure to excess ammonia emissions. In this case, it is undisputed that defendants could have built their proposed poultry houses on an alternate site on their land away from

---

[1] 265 Ga. 889 (466 SE2d 196) (1995).

plaintiffs' properties but chose the location at issue because of the financial considerations involved with making an access road to the alternate site for ConAgra's trucks.

Plaintiffs obtained a TRO and the case went to bench trial in superior court on plaintiffs' complaint for nuisance based inter alia on the environmental pollution from poultry house ammonia emissions that would interfere with plaintiffs' health and enjoyment of their homes. The trial court heard conflicting expert testimony from both sides regarding the degree of ammonia emissions from the proposed poultry houses. Following the close of evidence, the court issued judgment in favor of defendants. The court found that,

> There is an absence to a reasonable degree of certainty that the proposed poultry houses will create a nuisance for Plaintiffs. . . . Without doubt, there are periods of unpleasant irritating experiences with poultry houses, but generally, and in this case, [it] would be of insufficient duration to deprive the property owner of a legitimate use of their property. Franklin County leads the state in the number of poultry houses so the proposal by Defendants [is] consistent with the locality and character of the Franklin County community. The Defendants' proper construction [and] operation will not legally depreciate or hinder Plaintiffs' enjoyment of their properties.

*Held*:

1. Plaintiffs claim the trial court's factual findings are clearly erroneous and direct our attention to the evidence regarding the degree of ammonia emissions from the proposed poultry houses. In that regard, our review of the evidence of record shows as follows:

In order to calculate the degree of the ammonia emissions from the proposed poultry houses and its impact on plaintiffs' properties, defendants' experts constructed an "air model" using data obtained from a single outside source, Truelove's poultry farm. Truelove's poultry farm has two poultry houses, not four. Each of Truelove's poultry houses is 1,000 square feet smaller than the proposed poultry houses. Newer poultry houses, such as the proposed ones, have greater ammonia emissions than older ones like Truelove's, because new regulations permit the houses to be larger with more chickens and bigger exhaust fans. Defendants' experts gathered an air sample from Truelove's over a 24-hour period on June 6 and 7, 2002. Evidence showed that hotter weather in July and August would increase the amount of ammonia emissions, and any increase in emissions would impact on the short term acceptable air concentrations of ammonia.

Defendants' experts testified to expected air concentrations of ammonia from the proposed poultry houses based on data which was not collected pursuant to the guidelines agreed upon by the parties as an appropriate means for impact assessment, the "Guideline for Ambient Impact Assessment of Toxic Air Pollutant Emissions" issued by the Georgia Department of Natural Resources, Environmental Protection Division, Air Protection Branch. Under these guidelines, air impact assessments are based upon a maximum one-hour average ammonia emission rate sample during worst case conditions and, ideally, on at least three separate sampling dates. Defendants' experts conducted a single sampling of Truelove's poultry houses utilizing a mean average of the two houses over the course of twenty-four hours, which included several hours where the exterior ammonia emissions from the sample houses registered 0.00 parts per million ("PPM") because the exhaust fans were turned off; defendants' sampling did not reflect the worst case conditions. Defendants' expert witnesses testified to ammonia dispersal rates from calculations that used Atlanta geographic and weather patterns that were from nine to fourteen years old, not local Franklin County wind directions, wind speeds, and ground cover. Based on this data, defendants' experts opined that the concentration of ammonia at plaintiffs' homes from the proposed poultry houses will not exceed either the EPA's IRIS[2] guidelines' average acceptable ammonia concentration of 0.14 PPM or the guidelines' acceptable short term (15-minute) ammonia concentration of 3.4 PPM.

Using defendants' data but local geographic and meteorological patterns, plaintiffs' expert testified that the short term concentration of ammonia from the proposed poultry houses would be an unacceptable 6.9 PPM for at least 17 hours per year; this resulted, although the defendants' data was from a dissimilar source that did not reflect the worst hour of air concentration. Plaintiffs' expert testified that such emissions would be reasonably certain to adversely affect the plaintiffs' health. Data introduced from the World Health Organization, Duke University's Taste and Smell Lab, and Wisconsin's Department of Health and Family Services established that ammonia has a sharp, acrid, and pungent odor at 0.7 PPM and that exposure to ammonia above 1.0 PPM can cause irritation of eyes, nose, and throat.

We find no basis for reversal in the conflicting evidence of record regarding the degree of ammonia emissions from the proposed poultry houses. In a bench trial, the court sits as the trier of fact, and "an appellate court will not disturb fact findings of a trial court if there is

---

[2] Environmental Protection Agency's Integrated Risk Information System.

any evidence to sustain them."[3] Here, the trial court chose what evidence to reject and what to accept. The court concluded that the proposed poultry houses would produce unpleasant irritating experiences of "generally . . . insufficient duration to deprive the property owner of a legitimate use of their property." As there was evidence to support this finding, albeit conflicting evidence, we find no error.

2. Next, plaintiffs claim the trial court erred as a matter of law in concluding that the evidence did not show to a reasonable degree of certainty that the four proposed poultry houses would constitute a nuisance. We agree.

> A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man.[4]

In the case of *May v. Brueshaber,* supra (*"Brueshaber"*), our Supreme Court provided guidance as to the standards to be considered when determining the potential nuisance impact of two proposed commercial poultry houses on a surrounding area that contained additional commercial poultry ventures.[5] A key consideration in *Brueshaber* was the location in which an otherwise permissible enterprise is to be performed:

> As for when a business may constitute a nuisance, this Court has stated that a thing that is lawful and proper in one locality may be a nuisance in another. In other words, a nuisance may consist merely of the right thing in the wrong place, regardless of other circumstances. If one does an act, of itself lawful, which, being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do that act where it will not be injurious or offensive. To constitute a nuisance, it is not necessary that the noxious

---

[3] (Citations and punctuation omitted.) *Kimbrell v. Effingham Bd. of Tax Assessors,* 191 Ga. App. 544, 546 (382 SE2d 388) (1989).

[4] OCGA § 41-1-1.

[5] See OCGA § 41-2-4 ("Where the consequence of a nuisance about to be erected or commenced will be irreparable damage and such consequence is not merely possible but to a reasonable degree certain, an injunction may be issued to restrain the nuisance before it is completed.").

trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.[6]

Here, the trial court expressly found that "there will be unpleasant irritating experiences" with the proposed poultry houses, but concluded the duration of the unpleasant experiences would be "generally" short. These findings demonstrate with "a reasonable degree of certainty" that four large commercial poultry houses erected 480 feet from the nearest plaintiffs' house, each with six 36″ ventilation fans exhausting ammonia emissions toward plaintiffs' properties, would be a continuous event "offensive to the senses, and . . . render[ ] the enjoyment of life and property uncomfortable" so as to establish one of the criteria for nuisance under *Brueshaber*. The "generally" short duration of each unpleasant, irritating, and uncomfortable experience would not appear controlling if such experiences "cause[ ] hurt, inconvenience, or damage to another."[7]

Further, the trial court's findings of fact show with reasonable certainty that the ammonia emissions from the proposed poultry houses would trigger asthma in several of the plaintiffs and, to establish nuisance under *Brueshaber*, "it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses."[8] The court's findings show that the unpleasant, irritating, and uncomfortable experiences produced by the poultry houses would "cause[ ] hurt, inconvenience, or damage to another."[9] Accordingly, another criterion for establishing nuisance under *Brueshaber* exists in this case.

Finally, the trial court's conclusion that the proposed poultry houses "are consistent with the locality and character of the Franklin County community" is not legally determinative; it ignores the *Brueshaber* criteria that,

If one does an act, of itself lawful, which, *being done in a particular place*, necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find *some other place* to do that act where it will not be

---

[6] (Punctuation and footnote omitted.) *May v. Brueshaber*, supra at 889-890; *Superior Farm Mgmt. v. Montgomery*, 270 Ga. 615, 618 (1) (513 SE2d 215) (1999).

[7] OCGA § 41-1-1.

[8] (Punctuation and footnote omitted.) *May v. Brueshaber*, supra at 890; *Superior Farm Mgmt. v. Montgomery*, supra at 615.

[9] OCGA § 41-1-1.

injurious or offensive.[10]

Since the trial court's findings establish that the defendants' proposed poultry houses will be irreparably unpleasant, irritating, offensive, and trigger asthma in some plaintiffs, it is error as a matter of law to find a lack of nuisance on the basis that "Franklin County leads the state in the number of poultry houses." "[T]he fact that the act done may otherwise be lawful shall not keep it from being a nuisance."[11] Here, the important factor under *Brueshaber* is that the trial court's findings show that an alternative site existed that would have permitted defendants to engage in their commercial poultry venture without impacting injuriously on plaintiffs' homes and health; that site was rejected by defendants on a cost basis, because they did not want to make an access road. Indeed, the court recognized that, with the cost of on-going litigation in this case, "it's too bad [defendants] didn't use some of the cost and buil[d] that road . . . then everybody would have been happy."

In this case, the trial court's findings of fact establish to a reasonable degree of certainty that the ammonia emissions from defendants' four proposed commercial poultry houses would be irreparably irritating, unpleasant, and offensive to plaintiffs in their homes; the ammonia emissions from the proposed poultry houses would trigger asthma in some plaintiffs; and an alternative site exists on which to erect the proposed poultry houses, which site would not impact so injuriously on plaintiffs. Thus, under the criteria articulated in *Brueshaber*, we conclude that the trial court erred as a matter of law in finding that defendants' commercial poultry venture would not create a nuisance pursuant to OCGA § 41-1-1. We reverse this case and remand for the trial court to enter a permanent injunction as to the current construction site of the four proposed poultry houses and, in the exercise of its equity powers in balancing the hardships to all parties, to allow, authorize, but not require the defendants to build on the alternative site which was of greater expense to defendants but of lesser injurious impact to plaintiffs.

*Judgment reversed and case remanded for further proceedings not inconsistent with this opinion. Ruffin, P. J., and Adams, J., concur.*

---

[10] (Punctuation and footnote omitted; emphasis supplied.) *May v. Brueshaber,* supra; *Superior Farm Mgmt. v. Montgomery,* supra at 618.

[11] OCGA § 41-1-1.

DECIDED AUGUST 24, 2004 —
RECONSIDERATION DENIED SEPTEMBER 13, 2004 — 

*Donald D. Stack, Jonathan L. Schwartz*, for appellants.
*Stewart, Melvin & Frost, J. Douglas Stewart*, for appellees.