311 Ga. 784
FINAL COPY

S20G1214. STAR RESIDENTIAL, LLC et al. v. HERNANDEZ.

MELTON, Chief Justice.

This case arises from an incident in which Manuel Hernandez was shot and seriously injured by unknown assailants as he approached the doorway to his apartment. Hernandez filed suit against the owner of the apartment complex, Terraces at Brookhaven, and the operator of the complex, Star Residential, LLC (collectively "Star Residential"), asserting, among other things, a nuisance claim under the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq. (the "Gang Act"). Hernandez claimed that he was entitled to treble damages (i.e., three times the actual damages he sustained in the shooting) and punitive damages under OCGA § 16-15-7 (c) because his injuries occurred as a result of a criminal street gang creating a public nuisance on Star

Residential's property.[1] See OCGA § 16-15-7 (a) ("Any real property which is erected, established, maintained, owned, leased, or used by any criminal street gang for the purpose of conducting criminal gang activity shall constitute a public nuisance and may be abated as provided by Title 41, relating to nuisances.") and (c) ("Any person who is injured by reason of criminal gang activity shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages[.]"). Star Residential moved to dismiss Hernandez's nuisance claim, but the trial court denied the motion.

The Court of Appeals affirmed the trial court's denial of the motion to dismiss, holding, in relevant part, that whether to hold a property owner liable under OCGA § 16-15-7 (c) of the Gang Act for maintaining a public nuisance is always a question for the factfinder to decide, and not for the court. See *Star Residential v. Hernandez*, 354 Ga. App. 629, 633-634 (1) (841 SE2d 392) (2020) ("OCGA § 16-

---

[1] There is no claim in this case that Star Residential was directly affiliated or involved with a street gang. Nor is there any allegation that Star Residential was involved in the shooting or engaged in criminal gang activity.

15-7 provides for a cause of action for treble damages to persons injured by reason of criminal gang activity if the factfinder determines that the action is consistent with the . . . codified legislative intent [of the Gang Act]. . . . Thus, whether the present action is consistent with the intent set forth in OCGA § 16-15-2 is not a threshold issue for courts to resolve[.]"). We granted Star Residential's petition for a writ of certiorari to determine whether the Court of Appeals properly construed the civil liability provision of OCGA § 16-15-7 (c). For the reasons that follow, we conclude that the Court of Appeals' interpretation of the statute is incorrect. Accordingly, we reverse.

1. In order to determine the proper meaning of OCGA § 16-15-7 (c) of the Gang Act, we examine the Act's plain language, presuming

> that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would . . . [and] if the statutory text is clear and

3

unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). Additionally, "in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." (Citation and punctuation omitted.) *Lyman v. Cellchem Intl.*, 300 Ga. 475, 477 (796 SE2d 255) (2017).

With these principles in mind, our analysis begins with a consideration of the relevant language contained in OCGA § 16-15-7 of the Gang Act, which states:

(a) Any real property which is erected, established, maintained, owned, leased, or used by any criminal street gang for the purpose of conducting criminal gang activity shall constitute a public nuisance and may be abated as provided by Title 41, relating to nuisances.

(b) An action to abate a nuisance pursuant to this Code section may be brought by the district attorney, solicitor-general, prosecuting attorney of a municipal court or city, or county attorney in any superior, state, or municipal court.

4

(c) Any person who is injured by reason of criminal gang activity shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages; provided, however, that no cause of action shall arise under this subsection as a result of an otherwise legitimate commercial transaction between parties to a contract or agreement for the sale of lawful goods or property or the sale of securities regulated by Chapter 5 of Title 10 or by the federal Securities and Exchange Commission. Such person shall also recover attorney's fees in the trial and appellate court and costs of investigation and litigation reasonably incurred. All averments of a cause of action under this subsection shall be stated with particularity. No judgment shall be awarded unless the finder of fact determines that the action is consistent with the intent of the General Assembly as set forth in Code Section 16-15-2.

(d) The state, any political subdivision thereof, or any person aggrieved by a criminal street gang or criminal gang activity may bring an action to enjoin violations of this chapter in the same manner as provided in Code Section 16-14-6 [Civil remedies under the Georgia Racketeer Influenced and Corrupt Organizations Act].

Read as a whole, OCGA § 16-15-7 provides different causes of action for different remedies with different plaintiffs and defendants. The first such cause of action is for nuisance, which is covered under subsections (a) and (b). In this regard, OCGA § 16-15-7 (a) states:

Any real property which is erected, established, maintained, owned, leased, or used by any criminal street gang for the purpose of conducting criminal gang activity shall constitute a public nuisance and may be *abated* as provided by Title 41, relating to nuisances.

(Emphasis supplied.)

Subsection (a) says nothing about civil damages. It does not create an ability for any party to pursue an action for damages arising from a public nuisance created by criminal gang activity. To the contrary, the subsection speaks only in terms of *abatement* of a public nuisance.[2] See, e.g., *Superior Farm Mgmt. v. Montgomery*, 270 Ga. 615, 615 (513 SE2d 215) (1999) (action in abatement involves temporary and permanent injunctive relief to halt activity that is causing nuisance). The Gang Act then goes on in subsection (b) to identify the plaintiffs who may pursue an action for abatement:

---

[2] Hernandez points to OCGA § 41-1-3, which allows an individual to pursue a cause of action for nuisance damages "if a public nuisance in which the public does not participate causes special damage to [that] individual[.]" However, his reliance on OCGA § 41-1-3 is misplaced, as the general provisions on nuisance contained in Chapter 1 of Title 41 have nothing to do with the *abatement* procedures contained in *Chapter 2* of Title 41.

6

An action to *abate* a nuisance *pursuant to this Code section* may be brought *by the district attorney, solicitor-general, prosecuting attorney of a municipal court or city, or county attorney* in any superior, state, or municipal court.

(Emphasis supplied.)

As in subsection (a), there is no mention in subsection (b) of the availability of civil damages. And, with respect to the remedy that *is* available under subsection (a) — abatement — private individuals are not listed as proper parties under subsection (b) to pursue such a remedy under the Gang Act.[3] The specific entities listed as proper parties to pursue abatement are "the district attorney, solicitor-general, prosecuting attorney of a municipal court or city, or county

---

[3] Under Chapter 2 of Title 41, "[p]rivate citizens may not generally interfere to have a public nuisance abated. A complaint must be filed by the district attorney, solicitor-general, city attorney, or county attorney on behalf of the public. However, a public nuisance may be abated upon filing of a complaint by any private citizen specially injured." OCGA § 41-2-2. While OCGA § 16-15-7 (b) lists many of the same entities referenced in OCGA § 41-2-2 as proper plaintiffs to pursue an action for abatement under the Gang Act, OCGA § 16-15-7 (b) also contains some significant differences from OCGA § 41-2-2. Specifically, OCGA § 16-15-7 (b) adds the "prosecuting attorney of a municipal court or city" to the list of potential plaintiffs who may file a complaint to abate a nuisance under the Gang Act, but deletes from that list the "city attorney" referenced in OCGA § 41-2-2. Furthermore, unlike OCGA § 41-2-2, OCGA § 16-15-7 (b) does *not* contain any reference to specially injured individuals being allowed to pursue an action for abatement.

attorney." This demonstrates that the General Assembly intended that private individuals would *not* be able to pursue an action for abatement under the Gang Act. See *Turner v. Ga. River Network,* 297 Ga. 306, 308 (773 SE2d 706) (2015) (Some "longstanding tenets of statutory construction [are] *expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded).") (citation and punctuation omitted; emphasis in original). Thus, under the plain terms of subsections (a) and (b), Hernandez cannot pursue any form of damages or abatement in connection with a public nuisance created by criminal gang activity.

Separate from the nuisance abatement action created by subsections (a) and (b) for certain public officials, the next cause of action created by OCGA § 16-15-7 is defined in subsection (c). That subsection provides that "[a]ny person who is injured *by reason of criminal gang activity* shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive

8

damages[.]" (Emphasis supplied.) In other words, a cause of action

under subsection (c) must result from criminal gang activity, which

is defined as

> *the commission, attempted commission, conspiracy to commit, or the solicitation, coercion, or intimidation of another person to commit* any of the following offenses on or after July 1, 2006:
>
> (A) Any offense defined as racketeering activity by Code Section 16-14-3;
>
> (B) Any offense defined in Article 7 of Chapter 5 of this title, relating to stalking;
>
> (C) Any offense defined in Code Section 16-6-1 as rape, 16-6-2 as aggravated sodomy, 16-6-3 as statutory rape, or 16-6-22.2 as aggravated sexual battery;
>
> (D) Any offense defined in Article 3 of Chapter 10 of this title, relating to escape and other offenses related to confinement;
>
> (E) Any offense defined in Article 4 of Chapter 11 of this title, relating to dangerous instrumentalities and practices;
>
> (F) Any offense defined in Code Section 42-5-15, 42-5-16, 42-5-17, 42-5-18, or 42-5-19, relating to the security of state or county correctional facilities;
>
> (G) Any offense defined in Code Section 49-4A-11, relating to aiding or encouraging a child to escape from custody;
>
> (H) Any offense of criminal trespass or criminal damage to property resulting from any act of gang related painting on, tagging, marking on, writing on, or creating any form of graffiti on the property of another;

(I) Any criminal offense committed in violation of the laws of the United States or its territories, dominions, or possessions, any of the several states, or any foreign nation which, if committed in this state, would be considered criminal gang activity under this Code section; and

(J) Any criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed.

(Emphasis supplied.) OCGA § 16-15-3 (1).

Consistent with the manner in which we have interpreted the language "by reason of" in similar statutory contexts, the plain language of subsection (c) indicates that an injured person may pursue a cause of action for treble and, where appropriate, punitive damages against the actors who proximately caused the plaintiff's injuries by reason of their criminal gang activity. Cf. *Vernon v. Assurance Forensic Accounting*, 333 Ga. App. 377, 391-393 (4) (774 SE2d 197) (2015) (plaintiff injured "by reason of" criminal racketeering activities must show that the defendant who engaged in the illegal racketeering activities proximately caused the

plaintiff's injuries). In this case, however, there is no allegation that Star Residential itself committed, attempted to commit, conspired to commit, or solicited, coerced, or intimidated another person to commit any of the criminal gang activity that injured Hernandez. Accordingly, Hernandez cannot maintain a cause of action against Star Residential under subsection (c) as a matter of law.

In reaching its erroneous conclusion that Hernandez could maintain a nuisance cause of action under subsection (c), the Court of Appeals improperly grafted the terms of subsections (a) and (b) onto subsection (c) even though, as explained above, these subsections describe entirely separate causes of action. Subsections (a) and (b) describe the nature of a public nuisance created by criminal gang activity and provide procedures for specific *public officials* to abate that nuisance, whereas subsection (c) provides a private cause of action for damages against the members and associates of criminal street gangs who proximately cause a plaintiff's injury through criminal gang activity.[4] There is no cause

_____

[4] The fact that subsection (c) provides a separate remedy from the

11

of action for abatement available to Hernandez under subsections (a) and (b), nor does any viable cause of action against Star Residential exist under the separate provisions of subsection (c) under the facts alleged in this case.

Thus, with regard to the nuisance claim alleged by Hernandez, because the Gang Act does not establish a cause of action for damages under subsection (c) arising from a public nuisance created

---

abatement remedy referenced in subsections (a) and (b) is underscored by the final section of OCGA § 16-15-7. Subsection (d) establishes yet another cause of action for a different set of plaintiffs with the remedy of injunction, providing that

> [t]he state, any political subdivision thereof, or any person aggrieved by a criminal street gang or criminal gang activity may bring an action to enjoin violations of this chapter in the same manner as provided in Code Section 16-14-6 [Civil remedies under the Georgia Racketeer Influenced and Corrupt Organization Act].

Subsection (d) allows individuals aggrieved by a criminal gang or criminal gang activity (as well as governmental entities) to enjoin violations of the Gang Act in the same manner that individuals can enjoin violations of the RICO Act. This includes obtaining an order from a superior court that would require a defendant to divest himself of any interest in a criminal enterprise, impose restrictions on the defendant's future investments, order the dissolution of an enterprise, order the revocation of an enterprise's license to operate in the state, or order the forfeiture of a company's charter. See OCGA § 16-14-6 (a). The authority for individuals to enjoin certain activities provided in subsection (d) has nothing to do with the abatement of a nuisance by public officials provided in subsections (a) and (b), nor does it have anything to do with damages as provided in subsection (c). The terms of subsection (d) cannot be rationally grafted onto the terms of subsections (a) to (c). The plain language of OCGA § 16-15-7 makes clear that the statute provides for several separate remedies in its separate subsections.

by gang activity as defined under subsections (a) and (b), the Court of Appeals erred in concluding otherwise. We cannot read beyond the plain language of the Gang Act to create a private civil cause of action for nuisance damages under subsection (c) where none exists. See, e.g., *You v. J.P. Morgan Chase Bank*, 293 Ga. 67, 75 (4) (743 SE2d 428) (2013) ("As members of this State's judicial branch, it is our duty to interpret the laws as they are written."); *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.").

2. The Court of Appeals also erred in its interpretation of the following language of OCGA § 16-15-7 (c):

> No judgment shall be awarded *unless the finder of fact determines* that the action is consistent with the intent of the General Assembly as set forth in Code Section 16-15-2.

(Emphasis supplied).

The Court of Appeals reasoned that this language indicated that "it is for the *factfinder* to determine whether [a cause of] action

13

is consistent with the legislative intent expressed in OCGA § 16-15-2." (Emphasis in original.) *Star Residential*, supra, 354 Ga. App. at 634 (1). Accordingly, the Court of Appeals determined that whether Hernandez's cause of action was "consistent with the intent set forth in OCGA § 16-15-2 [was] not a threshold issue for courts to resolve," and that the court had to "give effect to that policy choice" of the General Assembly. Id. This reasoning is incorrect.

As an initial matter, "[o]ur well established rules of statutory interpretation require *courts* to ascertain the legislature's intent in enacting the law in question." (Citation omitted; emphasis supplied.) *Inagawa v. Fayette County*, 291 Ga. 715, 717 (1) (732 SE2d 421) (2012). And, there is nothing in the language of subsection (c) to indicate that the General Assembly intended for a jury to usurp the judiciary's role of determining the meaning of the statute at issue. The plain language of subsection (c) states that no *judgment* shall be awarded under the subsection unless the cause of action presented to the factfinder is consistent with the legislative intent of the statute. This means only that, once a legally *appropriate* cause

14

of action is submitted to the factfinder for decision, that factfinder must be instructed on the legislative intent codified in OCGA § 16-15-2 in order to determine if the circumstances of the case warrant the imposition of liability under OCGA § 16-15-7 (c).[5] The statute simply does not say that a factfinder must determine the *meaning* of subsection (c) in the first instance, which is a role reserved for the courts.[6]

*Judgment reversed. All the Justices concur.*

---

[5] In this regard, OCGA § 16-15-2 acts as a limit on the scope of conduct for which defendants may be held liable for damages under OCGA § 16-15-7 (c). For example, pursuant to OCGA § 16-15-2 (a):

. . .

It is not the intent of this chapter to interfere with the exercise of the constitutionally protected rights of freedom of expression and association. The General Assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any lawful subject whatsoever, to associate lawfully with others who share similar beliefs, to petition lawfully constituted authority for a redress of perceived grievances, and to participate in the electoral process.

[6] No other business. . . .

Decided June 21, 2021.

Certiorari to the Court of Appeals of Georgia — 354 Ga. App. 629.

*Hawkins Parnell & Young, Willie C. Ellis, Jr., Warner S. Fox, Elliott C. Ream, Robert B. Gilbreath*, for appellants.

*S. Leighton Moore III*, for appellee.

*Freeman Mathis & Gary, Jacob E. Daly; Drew, Eckl & Farnham, Jeffrey S. Ward, Elissa B. Haynes; Balch & Bingham, Malissa A. Kaufold-Wiggins; Ellis Painter Ratterree & Adams, Philip M. Thompson; FisherBroyles, Barry Goheen; James M. Williams*, amici curiae.