## S12G1935. SPECTERA, INC. v. WILSON et al.

(749 SE2d 704)

BENHAM, Justice.

This appeal is from the grant of a petition for a writ of certiorari from a decision issued by the Court of Appeals in *Spectera, Inc. v. Wilson*, 317 Ga. App. 64 (730 SE2d 699) (2012). The record shows that appellant Spectera is a vision care insurer providing eye care benefits coverage to Georgia residents. To provide eye care coverage for its insureds, Spectera contracts with different types of vision care providers including independent participating providers and retail chain providers. Appellee Steven M. Wilson is a licensed optometrist employed by Steven M. Wilson, O.D., P.C., providing eye care services in Lowndes County as Wilson Eye Center ("WEC"). Appellees Cynthia McMurray, Jodie E. Summers, and David Price are also licensed optometrists employed by WEC. Prior to 2010, Spectera had entered provider contracts known as "Patriot contracts" with Wilson and McMurray, and they became members of Spectera's panel of eye care providers. Summers likewise was on Spectera's panel of eye care providers. Under the Patriot contract, independent participating providers such as appellees could use their own materials (lenses, frames, contacts) or materials obtained from any other source to service Spectera insureds who came to them for their eye care needs. Appellees' business practice was to keep an inventory of materials that it obtained from third parties. Under the Patriot contract, Spectera would reimburse appellees for the materials Spectera insureds used from WEC's inventory by paying appellees a fee for their materials' costs and by having Spectera insureds remit a materials co-payment to appellees. See *Spectera, Inc. v. Wilson*, supra, 317 Ga. App. at 68.

In 2010, Spectera decided to terminate its Patriot contracts and replace them with independent participating provider (IPP) agreements. Spectera's IPP agreement describes "Covered Vision Services" as follows:

> The Provider shall provide a professional comprehensive eye examination, including tonometry, when indicated. The Provider shall provide professional and courteous dispensing and fitting of eyeglasses and/or contact lenses to Patients. *When the use of a laboratory is required to provide services or products to Enrollees, the Provider agrees to use [Spectera's*

*optical laboratory].*[1]

(Emphasis supplied.) According to the affidavit of Lori Archer, Spectera's Senior Vice President of Provider Network Solutions, this portion of the IPP agreement (the "covered materials requirement") means independent participating providers like appellees would be required to obtain covered materials (lenses, frames, and "formulary contact lenses") from Spectera when servicing Spectera insureds. Under this agreement, Archer states the only materials independent participating providers like appellees may provide to Spectera insureds, regardless of the source of the materials, would be non-covered materials such as prescription sunglasses or spare pairs of eye-glasses. In addition, Spectera admitted in its court filings that under the IPP agreement "[appellees] would no longer receive the reimbursement for materials from Spectera and would no longer be entitled to retain the materials co[-]pays from Spectera insureds." Spectera maintains the IPP agreement is more cost-effective for its insureds who seek eye care from independent eye care providers. In contrast to its IPP agreements with independent participating providers, Spectera does not impose a covered materials requirement in its contracts with the retail chain providers (i.e., Walmart). Thus, retail chain providers which service Spectera insureds may source their materials from any laboratory of their choosing and prepare those materials directly for Spectera insureds.

Appellees sued Spectera contending that Spectera's proposed IPP agreement violated various subsections of Georgia's Patient Access to Eye Care Act, OCGA § 33-24-59.12 (the "Act"). While the case was pending, the trial court issued a temporary injunction prohibiting Spectera from forcing its panel of independent participating providers in Georgia to abide by the IPP agreement. After the trial court temporarily enjoined Spectera from enforcing its IPP agreement, Spectera sought to remove appellees Wilson, Summers, and McMurray from its approved panel of providers altogether; but the trial court enjoined Spectera from taking such action. Although appellee Price was not on Spectera's provider panel, he alleged Spectera violated the Act by denying him membership on its panel because of his refusal to sign the IPP agreement. Upon considering the parties' cross-motions for summary judgment, the trial court

---

[1] In addition to providing vision care insurance, Spectera stated during oral argument that it operates the second largest full-service eye care laboratory in the country.

granted appellees' motions for summary judgment, denied Spectera's motion for summary judgment and issued a permanent injunction precluding Spectera from enforcing the restrictions contained in the IPP agreement as to "any other licensed eye care provider on [Spectera's] provider panel" or those who had applied for admittance to the panel. The trial court later modified its injunction by suspending it "as to eye care providers other than [appellees] pending a final determination on appeal."

Spectera appealed the trial court's decision to the Court of Appeals which affirmed in part and reversed in part. The Court of Appeals found that the covered materials requirement in the IPP agreement violated subsections (c) (2)[2] and (c) (5)[3] of the Act in regard to independent optometrists, and so it affirmed appellees' motions for summary judgment in regard to those subsections of the Act. *Spectera, Inc. v. Wilson*, supra, 317 Ga. App. at 69, 73. The Court of Appeals found no violation of subsection (c) (3),[4] and so it reversed the trial court's grant of summary judgment to the appellees in regard to that subsection. Id. at 73. As to subsection (c) (6)[5] of the Act, the Court of Appeals determined Spectera violated that subsection because it "unlawfully utilized an improper condition to exclude [appellee Price] from his initial admittance to the Panel," (id. at 74), and so it affirmed the grant of summary judgment to Price. Finally, the Court of Appeals limited the award of injunctive relief to independent optometrists. We granted Spectera's petition for a writ of certiorari and requested that the parties respond to the following question: "Did the Court of Appeals correctly construe OCGA § 33-24-59.12 (c) of the

---

[2] OCGA § 33-24-59.12 (c) (2) provides: "A health care insurer providing a health benefit plan which includes eye care benefits shall: . . . Not preclude a covered person who seeks eye care from obtaining such service directly from a provider on the health benefit plan provider panel who is licensed to provide eye care."

[3] OCGA § 33-24-59.12 (c) (5) provides: "A health care insurer providing a health benefit plan which includes eye care benefits shall: . . . Allow each eye care provider on a health benefit plan provider panel, without discrimination between classes of eye care providers, to furnish covered eye care services to covered persons to the extent permitted by such provider's licensure."

[4] OCGA § 33-24-59.12 (c) (3) provides: "A health care insurer providing a health benefit plan which includes eye care benefits shall: . . . Not promote or recommend any class of providers to the detriment of any other class of providers for the same eye care service. . . ."

[5] OCGA § 33-24-59.12 (c) (6) provides:

A health care insurer providing a health benefit plan which includes eye care benefits shall: . . . Not require any eye care provider to hold hospital privileges or impose any other condition or restriction for initial admittance to a provider panel not necessary for the delivery of eye care upon such providers which would have the effect of excluding an individual eye care provider or class of eye care providers from participation on the health benefit plan. . . .

Patient Access to Eye Care Act?" For the reasons below, we affirm in part, reverse in part, and vacate in part.

1. Spectera contends the Court of Appeals erred when it construed subsections (c) (2), (c) (3), and (c) (5) of the Act. We discuss Spectera's allegations regarding these subsections in turn.

(a) Spectera contends that its IPP agreement does not violate subsection (c) (2) of the Act. That subsection provides that an insurer "shall . . . [n]ot preclude a covered person who seeks eye care from obtaining such service directly from a provider on the health benefit provider panel who is licensed to provide eye care." Spectera argues the Court of Appeals erred when it found that the IPP agreement's covered materials requirement effectively required Spectera insureds to purchase their materials directly from Spectera. See *Spectera, Inc. v. Wilson*, supra, 317 Ga. App. at 68. According to Spectera, the use of the word "directly" in subsection (c) (2) is indicative of the legislature's intent to eliminate the requirement of a physician referral prior to obtaining eye care. Spectera claims its insureds receive their eye care directly from their providers because the providers still dispense the assembled materials (i.e., eyeglasses) which the provider has obtained from Spectera. Spectera further opines that independent participating providers like appellees are not the "covered person[s]" whom the statute protects.

> It is elementary that in all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.

*Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009) (citation and punctuation omitted). Here, Spectera's arguments are inconsistent with the plain language of the statute. While it is true that the requirement of a physician referral would likely be prohibited by subsection (c) (2), the statute is not limited only to that particular circumstance. The statute says the insurer shall not preclude an insured from seeking eye care directly from his eye care provider. "Eye care" is defined by the Act as "those *healthcare services and materials related to the care of the eye* and related structures and vision care services which a healthcare insurer is obligated to pay for or provide to covered persons under the health benefit plan."

OCGA § 33-24-59.12 (b) (3) (emphasis supplied). In addition, the practice of optometry consists of the correction of visual anomalies through the ". . . use of lenses, prisms, frames, mountings, contact lenses, . . . and any other means or methods for the relief, correction, or remedy of any insufficiencies or abnormal conditions of the human visual organism, other than surgery." OCGA § 43-30-1 (2) (A).

The IPP agreement limits independent participating providers like appellees from providing certain eye care to Spectera insureds. Specifically, the agreement prohibits appellees from assembling lenses and frames to provide a complete pair of eyeglasses to Spectera insureds, and it prohibits appellees from supplying Spectera insureds with contact lenses they have in their inventory at WEC. Rather, the IPP agreement requires Spectera customers to receive those eye care services only from Spectera. As Spectera admits, appellees' role in such transaction is *indirect* in that appellees only act as conduits between the insured and Spectera by ordering eyeglasses and contact lenses from Spectera's optical lab and then dispensing the finished eyeglasses and the contact lenses once they are returned from Spectera's optical lab. Inasmuch as appellees cannot provide certain eye care — in particular the preparation of eyeglasses[6] — directly to Spectera insureds, the IPP agreement violates subsection (c) (2) of the Act, and the judgment of the Court of Appeals must be sustained.

(b) As to subsections (c) (3) and (c) (5) of the Act, Spectera argues that the Court of Appeals defined the phrases "any class of providers" and "classes of eye care providers" too broadly inasmuch as it relied on a general dictionary definition of the word "class." See *Spectera, Inc. v. Wilson,* supra, 317 Ga. App. at 70-72. While we need not address any issue specific to subsection (c) (3),[7] we hold that Spectera is correct with respect to its claim regarding subsection (c) (5) of the Act. That subsection provides that

[a] health care insurer providing a health benefit plan which includes eye care benefits shall . . . [a]llow each eye care provider on a health benefit plan provider panel, without

---

[6] We are unpersuaded by the distinction Spectera makes as to who has to be licensed or not to make mechanical changes to lenses and frames. Optometrists are still responsible for the end product when servicing their customers whether or not they perform mechanical work themselves or delegate such work to unlicensed lab technicians. Under the IPP agreement, appellees would not be able to directly supervise the lab work performed by Spectera personnel.

[7] The Court of Appeals found that the IPP agreement did not violate subsection (c) (3) of the Act and so it is unnecessary to fully analyze that subsection in Spectera's appeal. Appellees complain that the Court of Appeals erred in finding no violation of subsection (c) (3); however, appellees did not file an appeal or a cross-appeal and so their objections to that ruling are not before this Court.

discrimination between classes of eye care providers, to furnish covered eye care services to covered persons *to the extent permitted by such provider's licensure.*

(Emphasis supplied.) The fact that the language and context of subsection (c) (5) specifically deal with classes of eye care providers on a benefit plan provider panel being allowed to furnish eye care services *"to the extent permitted by such provider's licensure"* can only mean that the legislature was contemplating classes of licensed eye care providers for purposes of subsection (c) (5). As Spectera points out, these licensed providers in Georgia would include ophthalmologists, opticians, and optometrists. The Court of Appeals, however, would expand this list to include any random and unrestricted group that happens to be involved in eye care in some way. This does not comport with the plain language and legislative intent of OCGA § 33-24-59.12 (c) (5), as the Court of Appeals' reading of subsection (c) (5) inappropriately renders the language of the statute regarding licensure superfluous, and it undermines the clear intent of the legislature to address discrimination with respect to licensed eye care providers. See, e.g., *Berryhill v. Ga. Community Support and Solutions, Inc.*, 281 Ga. 439, 441 (638 SE2d 278) (2006) ("Courts should give a sensible and intelligent effect to every part of a statute and not render any language superfluous") (citation omitted); *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[T]his Court does not have the authority to rewrite statutes."). Because the IPP agreement does not in any way create the type of impermissible discrimination between classes of licensed eye care providers contemplated by subsection (c) (5), the Court of Appeals was incorrect in its conclusion that the IPP agreement violated that subsection of the Act. Accordingly, we reverse this portion of the Court of Appeals' decision.

2. The trial court imposed the following injunctive relief after finding Spectera had violated the Act:

[Spectera] is also PERMANENTLY ENJOINED from excluding from its provider panel any [of the appellees] or any other licensed eye care provider who is a member of [Spectera's] provider panel or who has applied for admittance to [Spectera's] provider panel based on the eye care provider's refusal to accept any agreement or requirement precluding the eye care provider from preparing, supplying and selling eyeglass frames and lenses or supplying or selling contact lenses to persons covered by [Spectera's] plan. Therefore, [Spectera] is also PERMANENTLY ENJOINED from restricting [appellee] Price from being a member of [Spectera's]

provider panel and from terminating any of the agreements [Spectera] has with [appellees] Wilson, McMurray, and Summers.

Spectera contends the Court of Appeals erred when it effectively affirmed the trial court's grant of injunctive relief by construing subsection (c) (6) of the Act so as to uphold appellee Price's motion for summary judgment. Spectera also complains that its right to contract is being impinged inasmuch as the injunction precludes it from terminating its existing contracts with the other appellees.

In this case, appellee Price was justified in refusing to sign the IPP agreement because it violates subsection (c) (2) of the Act as discussed above. Subsection (c) (6) clearly prohibits insurers from barring new providers to its panel based on reasons unrelated to the provision of eye care. The signing of an unlawful contract is unrelated to the provision of eye care. As such, Spectera violated subsection (c) (6) when it declined to admit Price to its panel of providers based on his refusal to sign the IPP agreement.

As for permanently barring Spectera from terminating its contracts with appellees Wilson, McMurray, and Summers, however, the injunctive relief goes too far. The Act does not preclude insurers from terminating contracts with its existing eye care providers. Given the timing of Spectera's attempt to terminate its contracts with appellees, it appears Spectera's actions were motivated by the lawsuit and it was correct for the trial court to impose a temporary injunction to preserve the status quo. While Spectera's terminating its contracts with appellees Wilson, McMurray, and Summers may be an unpopular or ill-advised course of action, it cannot be said such action violates the Act. The termination of any outstanding contracts with appellees Wilson, McMurray, and Summers must be based on the lawful terms[8] stated in the contracts and not based on a permanent court injunction. Therefore, that portion of the permanent injunction against Spectera must be vacated.

*Judgment affirmed in part, reversed in part, and vacated in part. Thompson, C. J., Hines, P. J., Hunstein, Melton, Nahmias, JJ., and Judge George F. Nunn, Jr., concur. Blackwell, J., not participating.*

DECIDED NOVEMBER 4, 2013.

---

[8] The reasons for terminating any contract, however, may not violate the Act or otherwise be inconsistent with this opinion.

*Balch & Bingham, Michael J. Bowers, Malissa A. Kaufold-Wiggins, Cavender C. Kimble, Wade P. K. Carr, Bruce E. Baty, Eric J. Andalman,* for appellant.

*Elliott, Blackburn & Gooding, Walter G. Elliott II,* for appellees.
*Aubrey T. Villines, Jr., Jeffrey R. Filipovits,* amici curiae.