**FOURTH DIVISION
ELLINGTON, P. J.,
BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 7, 2017**

# In the Court of Appeals of Georgia

A16A1557. THE MEDICAL CENTER OF CENTRAL GEORGIA, INC. v. HOSPITAL AUTHORITY OF MONROE COUNTY

A16A1558. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v. HOSPITAL AUTHORITY OF MONROE COUNTY.

MERCIER, Judge.

In these related discretionary appeals, the Medical Center of Central Georgia, Inc. ("MCCG") and the Georgia Department of Community Health (the "Department") (collectively, "Appellants") appeal the judgment of the Superior Court of Monroe County (the "Superior Court") reversing the Department's grant of a letter of non-reviewability ("LNR") to MCCG for the acquisition of diagnostic equipment to be installed in a medical office building.

1. As a threshold matter, we address the Department's Motion to Vacate Judgment Under Review and Remand For Dismissal in Case No. A16A1558. Appellee, the Hospital Authority of Monroe County (d/b/a/ Monroe County Hospital) ("MCH"), filed in both cases a supplemental brief stating that "MCH and MCCG have negotiated a business and clinical affiliation that would include shared use of the imaging center at the core of this appeal. MCH and MCCG reached an agreement . . . that will, when finally executed, resolve the matter at issue in this appeal." Thus, MCH stated that it "will no longer defend the Superior Court Order overturning the [Department's] decision." The supplemental briefs were submitted concurrently with motions to withdraw MCH's requests for oral argument in these cases.

The Department contends that its appeal from the Superior Court's judgment is thereby rendered moot, but because the mootness was created by circumstances outside of the Department's control, we should vacate the judgment and remand the cases. See *Pimper v. State*, 274 Ga. 624, 626-627 (555 SE2d 459) (2001); *Babies Right Start v. Ga. Dept. of Pub. Health*, 293 Ga. 553, 555 (2) (a) (748 SE2d 404) (2013).

Contrary to the Department's contention, a ruling by this Court in this case would not constitute an advisory opinion or a determination of only abstract questions.

2

MCH's briefs indicate that there is an *anticipated* resolution of the issues between MCH and MCCG, but the record does not demonstrate that a final resolution has been achieved, or that the Superior Court's reversal of the Department's grant of the LNR to MCCG has been rendered moot from the perspective of MCCG. See *In re M.D.H.*, 334 Ga. App. 394, 395 (1) (779 SE2d 433) (2015); compare *Pimper*, supra; *Babies Right Start*, supra. The motion to vacate and remand is therefore denied, and we consider herein the contentions raised by Appellants.

MCCG contends that the Superior Court erred in (1) determining that the Department's interpretation of the phrase "offered in a hospital" violates the "equipment threshold" provision in OCGA § 31-6-40 (a) (3); (2) concluding that the Department exceeded its statutory authority by applying said provision to a hospital-based outpatient imaging center that is not located on a hospital's main campus; (3) ordering the Department to investigate certain expenditures related to the purchase and renovation of the medical office building intended to house the equipment that is the subject of the LNR; and (4) concluding that the exemption provisions of the Certificate of Need Act are subject to the capital expenditure threshold. The Department contends that the Superior Court erred in (1) finding that the Department's final decision was contrary to the equipment threshold provision in OCGA § 31-6-40 (a) (3); (2) finding

3

that the Department enacted a "hospital-based rule"; (3) finding that the Department abused its discretion by not conducting an investigation of the Monroe Regional Medical Complex; (4) ordering the Department to conduct an investigation of the costs of the Monroe Regional Medical Complex; and (5) reversing the Department's final decision where there was no genuine issue of material fact as to either prong of the equipment threshold provision analysis. For the reasons that follow, we reverse the judgment of the Superior Court.

2. The Department is authorized to administer Georgia's certificate of need ("CON") program, codified at OCGA § 31-6-40 et seq. See OCGA § 31-6-21. The Department is authorized to "adopt, promulgate, and implement rules and regulations sufficient to administer" the program. OCGA § 31-6-21 (b) (4). Generally, when a party seeks to establish a "new institutional health service," it must obtain a CON. OCGA § 31-6-40 (a). A party seeking approval for an activity that is believed not to be subject to the CON requirement based on the equipment threshold must provide prior notice to the Department of such activity and obtain an LNR. OCGA § 31-6-47.1; Ga. Comp. R. & Regs., r. 111-2-2-.10; see OCGA § 31-6-40 (a) (3).

MCCG is a not-for-profit hospital, and its main campus is located in Macon, Bibb County, Georgia. MCH is a political subdivision of the State of Georgia,

4

organized under the Georgia Hospital Authorities Law, OCGA § 31-7-70 et seq., and operates a hospital in Forsyth, Monroe County, Georgia. In 2013, MCCG proposed to establish a diagnostic suite at a medical office complex in Forsyth, Georgia, located in Monroe County, approximately 25 miles from MCCG's main campus. MCCG submitted an LNR request to the Department in August 2013, seeking a determination that its acquisition of a CT scanner, mammography equipment, and an x-ray machine did not require a CON. The application stated that the total value of the equipment and related items to be purchased was $701,032.30. Of that amount, the total value of the CT scanner and related items was $419,669.20.

MCCG's LNR request was based on OCGA § 31-6-40 (a) (3) (referred to herein as the "equipment threshold provision"), which provides that "new institutional health services" requiring a CON include

> [t]he purchase or lease by or on behalf of a health care facility or a diagnostic, treatment, or rehabilitation center of diagnostic or therapeutic equipment with a value in excess of $1 million [adjusted annually based on the consumer price index]; provided, however, that diagnostic or other imaging services that are not offered in a hospital or in the offices of an individual private physician or single group practice of physicians exclusively for use on patients of that physician or group practice shall be deemed to be a new institutional health service regardless of the cost

of equipment; and provided, further, that this shall not include build out costs, as defined by the department, but shall include all functionally related equipment, software, and any warranty and services contract costs for the first five years.

MCH filed a written objection to MCCG's LNR request, arguing that the diagnostic equipment would not be offered in a hospital, and that even if the purchases were for hospital-based equipment, they would exceed the capital expenditure threshold under OCGA § 31-6-40 (a) (2) (any expenditure in excess of 2.5 million dollars), and thus were subject to CON review. MCH argued that the expenses purportedly incurred in connection with the medical complex should be examined to determine whether they were necessary to the installation of the equipment at issue but not identified in the LNR request, and that the purchase of the equipment was part of a larger project whose aggregate cost exceeded the capital expenditure threshold in OCGA § 31-6-40 (a) (2).

The Department granted the LNR to MCCG, finding that the equipment was for use "in a hospital." It found that mammography and x-ray equipment were not subject to CON review or the diagnostic imaging equipment threshold, and that the CT scanner and related costs were below the then-current equipment threshold of

$1,126,874 for diagnostic imaging services offered in a hospital. Further, the Department found that the costs of the medical office building were not simultaneously developed and associated with the purchase of the equipment, based on MCCG having "confirmed" that the costs associated with the building were incurred approximately three years prior, citing Ga. Comp. R. & Regs., r. 111-2-2-.01 (8) (a), (b) (which provides that activities, services, expenditures and items are associated and simultaneously developed or planned if they occur within a six-month period), and noting that pursuant to OCGA § 31-6-40 (a) (3), build-out costs related to diagnostic and therapeutic equipment are excluded from the calculation of the equipment threshold.

MCH requested a fair hearing under the Georgia Administrative Procedure Act ("APA"). MCCG moved for summary adjudication. A hearing was held on September 4, 2014. The Department-appointed hearing officer granted summary adjudication to MCCG on November 5, 2014, concluding that there was no genuine dispute of material fact as to the issue of whether the proposed equipment purchase was for use in a hospital and that the value of the equipment was below the equipment threshold. In addition to the statutory and regulatory grounds cited in the LNR, the hearing officer noted that the medical office building was not purchased or renovated by MCCG and

7

the costs associated with it should not be included in the equipment threshold calculation.

MCH requested a review of the hearing officer's decision by the Department's Commissioner. On December 30, 2014, the Commissioner issued a final decision affirming the hearing officer's decision and the grant of the LNR (the "Final Decision"). MCH then filed a petition for judicial review in the Superior Court of Monroe County, contending that the Department's interpretation of the statutory phrase "offered in a hospital" in OCGA § 31-6-40 (a) (3) violated the plain language of the statute and exceeded the Department's statutory authority, and further arguing that the Department abused its discretion by not investigating expenditures related to the purchase and renovation of the medical office complex. The Superior Court reversed the Final Decision on the following grounds: (1) the Final Decision was contrary to the Equipment Threshold Provision; (2) The Department exceeded its authority in enacting a "hospital-based rule"; and (3) the Department abused its discretion in failing to investigate MCCG's expenditures on the medical office complex. The Superior Court reversed the Final Order, ordered MCCG to apply for a CON for the diagnostic equipment, and ordered the Department to conduct an investigation into the costs of the medical office complex.

3. We agree with Appellants that the Superior Court erred in determining that the Department's interpretation of the phrase "offered in a hospital" violates the equipment threshold provision in OCGA § 31-6-40, in concluding that the Department exceeded its statutory authority by applying said provision to a hospital-based outpatient imaging center, and in finding that the Department enacted a "hospital-based rule."

The Georgia APA, OCGA § 50-13-1 et seq., provides for the review by the Superior Courts of final agency decisions.

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13-19 (h). "Pursuant to this Code section, courts review agency findings of fact to determine whether they are supported by any evidence. And in considering

9

agency conclusions of law, courts conduct a de novo review." *Infinite Energy v. Ga. PSC*, 257 Ga. App. 757, 758 (1) (572 SE2d 91) (2002) (footnote omitted).

> While reviewing courts defer to agency interpretations of the statutes they are charged with administering, that deference applies only as far as the agency interpretation is consistent with the statute. Administrative agencies may not change a statute by interpretation, or establish different standards within a statute that are not established by a legislative body. [The Department] is authorized only to adopt and implement rules sufficient to administer the Act's provisions, including the CON program. The judicial branch determines independently whether the agency's interpretation correctly reflects the plain language of the statute and comports with the legislative intent. If reviewing courts find that [the Department] has acted within the authority granted the agency by statute, they defer to [the Department's] interpretation and application of the CON statute and the rules and regulations it has enacted to fulfill the function given it by the legislative branch.

*Palmyra Park Hosp. v. Phoebe Sumter Med. Center*, 310 Ga. App. 487, 491 (1) (714 SE2d 71) (2011) (citations and punctuation omitted).

The Superior Court found that the Department's interpretation of the phrase "in a hospital" in OCGA § 31-6-40 (a) (3) was contrary to that statute's plain meaning. We disagree.

10

When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). The Superior Court acknowledged this principle, but found that "[n]o ordinary understanding of this term would include services offered in a medical mall nearly 25 miles from the sponsoring hospital." The Superior Court's interpretation is contrary to the definition given by the legislature to the term "hospital;" the latter defines "hospital" as:

*an institution* which is primarily engaged in providing to inpatients, by or under the supervision of physicians, diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled or sick persons or rehabilitation services for the rehabilitation of injured, disabled, or sick persons. Such term includes public, private, psychiatric, rehabilitative, geriatric, osteopathic, and other specialty hospitals. (Emphasis supplied).

OCGA § 31-6-2 (21). This definition is not limited to a particular location, and nothing in OCGA § 31-6-40 indicates that a different definition is to be used therein, or that

11

this applicable definition is to be limited in the context of the equipment threshold provision.[1]

We disagree with MCH and the Superior Court that the use of the phrase "*part of a hospital*" elsewhere in the Health Planning Act requires that the phrase "*in a hospital*" be interpreted to include a geographical limitation. MCH points to Ga. Comp. R. & Regs., r. 111-2-2-.40, regarding ambulatory surgery service, as an example, and the Superior Court referenced that rule as a comparison as well. This rule provides that if the ambulatory surgery service is or will be provided as "part of a hospital," the hospital's provision of such service is not subject to CON review; it further provides that such services are always considered to be "part of a hospital" if 1) the service is located within the hospital, or 2) if the service is located in a building on the hospital's primary campus and that building, or relevant portion thereof, is included in the hospital's permit; and the Department will make determinations of

---

[1] "Institution" is pertinently defined as "an established organization or corporation (as a bank or university) especially of a public character." https://www.merriam-webster.com/dictionary/institution. Other definitions include "a significant practice, relationship, or organization in a society or culture"; "something or someone firmly associated with a place or thing;" and "a facility or establishment in which people (such as the sick or needy) live and receive care typically in a confined setting and often without individual consent." Id.

12

reviewability on a case-by-case basis in other situations involving hospitals. Ga. Comp. R. & Regs., r. 111-2-2-.40 (1). MCH contends, and the Superior Court held, that the Department's interpretation of "in a hospital" is inconsistent with this rule because if "hospital" includes an entire institution, without geographical limits, then the second part of the definition of "part of a hospital" in this rule would be unnecessary.

It is true that we must "avoid constructions that make some language mere surplusage or meaningless," construe a statute "in relation to other statutes of which it is a part," and construe together and harmonize "all statutes relating to the same subject-matter" wherever possible. *Aimwell, Inc. v. McLendon Enterprises, Inc.*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012). But it would be improper to overlook the statutory definition of a term and assume that a different meaning applies based on this *limited* definition of a similar phrase in an inapplicable Department rule. The definition of "part of a hospital" in the ambulatory surgery service rule is limited to that specific rule and does not conflict with the legislature's definition of the term "hospital" used in OCGA § 31-6-40. See Ga. Comp. R. & Regs., r. 111-2-2-.40 (1) (a).

MCH contends that an institution-wide interpretation of "in a hospital" is contrary to the importance of geography in the context of the Health Planning Act and

13

the Department's rules, citing several examples throughout the Health Planning Act and the related Department rules in which the scope of CONs or exceptions thereto are geographically limited. However, no such restriction or condition was provided in the portion of the equipment threshold provision at issue here, and we can assume that the legislature would have provided such a restriction or condition if it intended to do so, as it did elsewhere in the statute. See *Deal*, supra.

The Superior Court erred in holding that the Department's interpretation of the phrase "offered in a hospital" is contrary to the equipment threshold provision in OCGA § 31-6-40, and in holding that the Department exceeded its statutory authority in finding that a hospital-based outpatient imaging center is included in services that are offered "in a hospital." Further, the court was incorrect in holding that the Department had created a hospital-based rule, where the Department was applying the statutory provision. We therefore reverse the trial court's reversal of the Final Decision as to the grant of the LNR.

4. We agree with the Department and with MCCG that the Superior Court exceeded its jurisdiction in ordering the Department to investigate certain expenditures related to the purchase and renovation of the medical office complex. Whether the

Superior Court had jurisdiction to do so is a question of law that we review de novo. *Walker v. DOT*, 279 Ga. App. 287, 288 (1) (630 SE2d 878) (2006).

Ga. Comp. R. & Regs., r. 111-2-2.10 (6) authorizes a party who opposes the Department's determination approving a request for an exemption to obtain "judicial review of a final decision in the same manner and under the same provisions as in OCGA § 31-6-44.1 and Rule 274-1 et seq." The reviewing court may affirm the decision of the agency, remand the case for further proceedings or, under certain circumstances, reverse or modify the decision. OCGA § 50-13-19 (h); OCGA § 31-6-44.1 (a); see Ga. Comp. R. & Regs. r. 274-1-.20.

Here, the Superior Court stated:

> Having concluded that the [d]iagnostic [e]quipment should have undergone CON review, this [c]ourt turns its attention to the Monroe Regional Medical Complex as a whole. MCH does not contend in this appeal that MCCG's past spending on the Monroe Regional Medical Mall Complex was reviewable as part of the instant LNR application, but rather that its opposition to the LNR put [the Department] on notice of spending that likely would have required a CON under OCGA § 31-6-40 (a) (2), and [the Department] abused its discretion in failing to investigate such spending.

15

By the Superior Court's own description, this issue was outside the scope of its review of the Department's Final Decision regarding the grant of the LNR for specific equipment, and MCH cites no authority for a superior court to order the Department to conduct investigations. The Department has the *authority* to make public or private investigations or examinations to determine whether the provisions of Chapter 6 of Title 31 have been violated, and interested persons may bring an action for injunctive relief to enforce the provisions of the chapter. OCGA § 31-6-45 (d) and (e); compare *Diversified Health Mgmt. Svcs., Inc. v. Visiting Nurses Assoc. of Cordelle, Inc.*, 254 Ga. 500, 502 (4) (330 SE2d 885) (1985). However, the Department was under no obligation to conduct an investigation, and the initiation of such an investigation is "in the discretion of the [D]epartment." OCGA § 31-6-45 (e); Ga. Comp. R. & Regs. 111-2-2-.05 (3). Therefore, insofar as the Superior Court's judgment orders the Department to investigate spending related to the medical complex, it is reversed.

Having reversed the Superior Court's judgment which (a) reversed the Final Decision as to the grant of the LNR, and (b) ordered the Department to conduct an investigation, we need not address the Appellants' remaining contentions.

*Judgments reversed. Ellington, P. J., and Branch, J., concur.*