**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 23, 2022**

# In the Court of Appeals of Georgia

A22A0193. FUNVESTMENT GROUP, LLC v. CRITTENDEN.

BARNES, Presiding Judge.

This appeal seeks to overturn a superior court's judgment in favor of Robyn A. Crittenden, in her official capacity as the Commissioner of the Georgia Department of Revenue (the "Department"),[1] and against Funvestment Group, LLC (the "Taxpayer"). The contested ruling rejected the Taxpayer's claim that the amount it paid to lease certain of its business equipment is exempt from sales and use taxation. For the reasons explained below, the judgment is affirmed in part and vacated in part.

These facts are undisputed. The Taxpayer operates a business where children can drive miniature vehicles along an indoor track and learn about driving safety. At

---

[1] During the course of this litigation, Commissioner Crittenden replaced former Commissioner David M. Curry. See OCGA § 9-11-25 (d) (1).

its business, the Taxpayer also offers an arcade room, party rooms for group events, a restaurant, and a lab equipped with touchscreen computers and simulators. The Taxpayer leases certain of its business equipment – relevant here, its "coin operated amusement machines" a/k/a "COAMs" – from another entity, (non-party) Tiny Towne International, LLC. In leasing its COAMs during the relevant period, the Taxpayer was contractually obligated to pay Tiny Towne "10 percent [ ] of the total gross revenue after deductions for state master license, state sticker fees and refunds[] and 10 [percent] of other gross income generated by [the Taxpayer's] business."

The primary question in this appeal is whether the amount paid to lease the COAMs is exempt from taxation by OCGA § 48-8-3 (43):

> The sales and use taxes levied or imposed by this article shall not apply to: . . . [g]ross revenues generated from all bona fide coin operated amusement machines which vend or dispense music or are operated for skill, amusement, entertainment, or pleasure which are in commercial use and are provided to the public for play which will require a permit fee under Chapter 27 of title 50.

Regarding the procedural background, the Taxpayer filed a petition with the Georgia Tax Tribunal[2] seeking reprieve from the Department's assessment of sales and use tax on payments made for leasing the COAMS.[3] On cross-motions for summary judgment, each party contended that OCGA § 48-8-3 (43) was plain and unambiguous such that application thereof rendered the result it urged. The Tax Tribunal entered a decision in the Taxpayer's favor, concluding that "OCGA § 48-8-3 (43) exempts [the Taxpayer] . . . from paying sales and use tax on its lease payments to Tiny Towne[.]"

---

[2] The Georgia Tax Tribunal is an independent, specialized agency created by the General Assembly "to resolve disputes between the [D]epartment and taxpayers in an efficient and cost-effective manner." OCGA § 50-13A-2. See also OCGA §§ 50-13A-1 ("This chapter shall be known and may be cited as the 'Georgia Tax Tribunal Act of 2012.'"); 50-13A-3 ("As used in this chapter, the term 'tribunal' means the Georgia Tax Tribunal established by Code Section 50-13A-4 which shall be an independent and autonomous division within the Office of State Administrative Hearings operating under the sole direction of the chief tribunal judge."); 50-13A-4 (creating the Georgia Tax Tribunal).

[3] The parties agreed that the charges for customer operations of the COAMs were not subject to sales and use tax, and that the Department did not assess additional tax on those transactions.

Pursuant to OCGA § 50-13A-17,[4] the Department sought judicial review by the Fulton County Superior Court. The court concluded that the Taxpayer could not utilize that statutory exemption, determining that the exemption applies "to revenue generated from plays of COAMs, but does not apply to lease transactions of COAMs." Among other things, the court reasoned:

> [T]he plain language of the exemption means the COAM itself must "generate" the revenue by "vend[ing] or dispens[ing]" music or public play by inserting money. Because the *leases* do not constitute remuneration for "vend[ing] or dispens[ing]"music or public play, the exemption clearly applies only to the money inserted into the COAMs for play, not leases of the COAMs themselves.

(Emphasis in original.) The court went on to ascertain that the Taxpayer's "expansive interpretation of OCGA § 48-8-3 (43) would lead to absurd results." As the court saw it, the Taxpayer's position – which it summarized as "the lease payment it makes on COAMS[,] where some percentage of the payment includes participation play revenue[,] should be exempt from taxation simply because such payments are partially made with money generated from participation play" – would lead to the

---

[4] See OCGA § 50-13A-17 (a), (b) (providing that any party may appeal a final decision of the Tax Tribunal to the Superior Court of Fulton County).

4

untenable circumstance that any subsequent transaction using revenue from COAM participation plays would also be exempt. For example, the court elaborated: "Under [the Taxpayer's] interpretation, any purchase or lease of building, facilities, utilities, supplies, fixtures, furniture, etc., would be exempt as long as the purchases or leases were made with revenues from COAM participation plays." Additionally, the court cited *Ga. Dept. of Revenue v. Owens Corning*, 283 Ga. 489 (660 SE2d 719) (2008), for the principle that "the interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference." Id. at 490. Moreover, the superior court found that the legislative history surrounding the taxation of COAMs showed legislative intent to "exempt gross revenue generated from customers playing the machines, not leases." Finally, the superior court went on to hold that "[w]ithout proper evidence of the lease payments, the Department may assess sales tax for the leases based on the sales price of the COAMs." In light thereof, the superior court reversed the Tax Tribunal's decision, and remanded the case for judgment to be entered in favor of the Department. Dissatisfied with the superior court's order, the Taxpayer procured this discretionary appeal.

5

1. The Taxpayer contests the superior court's determination that OCGA § 48-8-3 (43) does not apply to their lease payments. "The interpretation of a statute is a question of law, which is reviewed de novo on appeal." *Junior v. Graham*, 313 Ga. 420, 423 (2) (870 SE2d 378) (2022); see *Amazing Amusements Group v. Wilson*, 353 Ga. App. 256, 256 (835 SE2d 781) (2019) (applying de novo standard of review, where case turned on statutory interpretation and resolution of questions of law).

(a) The Taxpayer contends that the superior court erred "by giving the words 'gross revenue' an unnatural meaning which limit those words to revenue generated from playing COAMs when the General Assembly did not include any words of limitation."

In support of this contention, the Taxpayer recites dictionary definitions of "gross revenues";[5] discerns therefrom that the ordinary and everyday meaning of "'gross revenues' does not limit [the exemption] to any particular source of revenue"; and asserts that "[n]owhere in the plain language does OCGA § 48-8-3 (43) limit the

---

[5] In particular, the Taxpayer recites that "gross revenues" is defined by Black's Law Dictionary (11th ed. 2019) as "Income from any and all sources; gross income or gross receipts"; further, the Taxpayer recites that Merriam Webster Dictionary defines "gross" as "consisting of an overall total exclusive of deductions" and "revenue" as "the total income produced by a given source."

. . . exemption to the transaction of playing COAMS." The Taxpayer thus posits, "The only natural reading of the exemption includes leased income in the gross revenues."

Even accepting the Taxpayer's premise concerning the applicable definition(s) of "gross revenues,"[6] we find no merit in the Taxpayer's ultimate position, because it disregards the express language requiring that the contemplated "gross revenues" were "generated from all bona fide coin operated amusement machines which vend or dispense music or are operated for skill, amusement, entertainment, or pleasure which are in commercial use and are provided to the public for play." OCGA § 48-8-3 (43).

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

---

[6] See generally *Smith v. Northside Hosp.*, 302 Ga. 517, 521 (1) (807 SE2d 909) (2017) (consulting dictionaries as part of statutory interpretation); *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014) (consulting dictionaries as part of statutory interpretation). And see, e. g., *United States v. Williams*, 5 F4th 1295, 1306 (III) (A) (11th Cir. 2021) (determining that "gross income" equated to "the full amount, without any offset") (citing Webster's Third New International Dictionary 1002 (3d ed. 1993) and Black's Law Dictionary 710, 767 (7th ed. 1999)).

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). Additionally, we are required "to avoid a construction that makes some language mere surplusage." *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003).

> Hence, we reject the Taxpayer's argument that:
>
> Nowhere in the plain language does OCGA § 48-8-3 (43) limit the sales and use tax exemption to the transaction of playing COAMS. . . . [T]he General Assembly chose *not* to limit the exemption. As the statute reads, the exemption applies to all gross revenue including gross revenue from the COAMS *used to make lease payments*.[7]

(Emphasis supplied.) Not only is the Taxpayer's position contrary to the principles noted above, the position fails to accord with these well-settled standards for reviewing taxation statutes:

> Taxation is the rule, and exemption from taxation is the exception. . . . Exemption, being the exception to the general rule, is not favored; but every exemption, to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which

---

[7] Elsewhere in its brief, the Taxpayer claims that, contrary to the superior court's assertion, "[it] has *never argued* 'that the lease payments it makes on COAMs where some percentage of the payment includes participation play revenue should be exempt from taxation simply because such payments are partially made with money generated from participation plan.'" (Emphasis in brief.)

8

it is given will not be enlarged by construction, but, on the contrary, will be strictly construed.

(Citation and punctuation omitted.) *Owens Corning*, 283 Ga. at 489 (reciting principles for determining applicability of exemption set forth in § 48-8-3). The statutory provision at issue here, OCGA § 48-8-3 (43), contains no clear and unambiguous expression of an exemption applicable also to the Taxpayer's lease payments to Tiny Towne.

For the foregoing reasons, this challenge to the superior court's judgment lacks merit. See generally *Spectera, Inc. v. Wilson*, 294 Ga. 23, 26 (1) (a) (749 SE2d 704) (2013) ("Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden.") (citation and punctuation omitted).

(b) Seeking to avoid such interpretation of the plain language of OCGA § 48-8-3 (43), the Taxpayer advances the following arguments.

(i) The Taxpayer contends that the superior court committed reversible error "when it found that the Tax Tribunal's decision was erroneous as a matter of law because it failed to accord deference to the Department in the interpretation of its

9

statutes." In an attempt to support this contention, however, the Taxpayer misplaces reliance on language only recently added to OCGA § 50-13A-14 (a).[8] And at any rate, because the pertinent language in OCGA § 48-8-3 (43) is "not ambiguous, we do not reach the question of whether deference is appropriate[.]" *City of Guyton v. Barrow*, 305 Ga. 799, 804 (2) (828 SE2d 366) (2019) (noting that "[d]eference is not due unless a court, employing traditional tools of statutory construction, is left with an unresolved ambiguity"; and reiterating that an ambiguity exists only after a court has exhausted all tools of construction) (citation and punctuation omitted).

(ii) In interrelated claims of error, the Taxpayer contends that the record does not support the superior court's finding that "the legislative history surrounding the taxation of COAMs shows that it was the General Assembly's intention to exempt gross revenue generated from customers playing machines, not leases." The Taxpayer goes on to proffer its own discernment of legislative history to contend that the

---

[8] Specifically, the Taxpayer cites the following language: "All questions of law decided by the tribunal, including interpretations of constitutional, statutory, and regulatory provisions, shall be made without any deference to any determination or interpretation, whether written or unwritten, that may have been made on the matter by the Department of Revenue[.]" OCGA § 50-13A-14 (a). Such language, however, applies to "proceedings commenced before the Georgia Tax Tribunal or a superior court of this state on or after [April 29, 2021]." Ga. L. 2021, p. 120, §§ 4, 5. Proceedings in this case commenced in the superior court prior to that date.

General Assembly instead intended to exempt lease payments when it enacted OCGA § 48-8-3 (43).

According to the Taxpayer, OCGA § 48-8-3 (43) was enacted as part of "wholesale changes to the way the [S]tate regulates and taxes COAMS." As the Taxpayer surmises, "[l]ocation licenses purchased by [COAM] lessees took the place of collecting sales tax on revenue generated from playing COAMS and master licenses took the place of collecting sales tax on revenue generated from leasing COAMs."[9] The Taxpayer goes on to assert that legislative intent to exempt monies paid to lease COAMS is demonstrated further by "the economic impact upon thousands of small businesses in the COAM industry" that otherwise would be taxed on such lease amounts. Morever, as the Taxpayer sees it, allowing the Department to

---

[9] As the Taxpayer asserts,
> The fact [that] the State ties the cost of the master license fee to the [S]tate sales and use tax rate shows that the legislature intended OCGA § 48-8-3 (43) to exempt sales and use tax on lease payments because the master license fee replaced and supplanted sales tax collected on COAM leases. The legislature enacted OCGA § 48-8-3 (43) with the intention it would apply to revenue generated from leasing COAMs because it eliminated the old system of taxing them.

The Taxpayer's assertions in this regard lack record citation and supporting case authority.

tax the amount paid to lease COAMs after the COAM-lessee has already paid for a location license amounts to "double taxation."[10]

"[O]ur well established rules of statutory interpretation require courts to ascertain the legislature's intent in enacting the law in question." (Citation, punctuation, and emphasis omitted.) *Star Residential, LLC v. Hernandez,* 311 Ga. 784, 790 (2) (860 SE2d 726) (2021); see *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014) ("In construing language used in a statute, . . . we also must consider the context in which a phrase is used and the legislative intent behind enactment of the statute."). Here, we reject the Taxpayer's challenge to the superior court's statutory interpretation, because OCGA § 48-8-3 (43) contains no language that bears out the Taxpayer's assessment that the legislators intended to exempt from taxation the amount paid to lease COAMs; and "we discern that the absence of such language was a matter of considered choice." (Citation and punctuation omitted.) *Moosa Co. v. Dept. of Revenue*, 353 Ga. App. 429, 433 (838 SE2d 108) (2020). See

---

[10] See OCGA §§ 50-27-71 (a.1) (providing in pertinent part that "[e]very location owner or location operator shall pay [to the Georgia Lottery] an annual location license fee for each bona fide coin operated amusement machine offered to the public for play"); 50-27-3 (9) ("As used in this chapter, the term: . . . 'Corporation' means the Georgia Lottery Corporation."); 50-27-1 ("This chapter shall be known and may be cited as the 'Georgia Lottery for Education Act.'").

*Star Residential*, 311 Ga. at 790 (2) (disapproving the interpretation of statute gleaned from purported legislative intent, where "nothing in the language of [the statutory provision]" indicated that the General Assembly intended such interpretation); *Malphurs v. State*, 336 Ga. App. 867, 870-871 (785 SE2d 414) (2016) (rejecting appellant's assertion that the General Assembly intended to provide him a certain protection and that the courts should thus read the statutory scheme to so protect him; reiterating "that is not how legislative intent or laws work," that instead, "[t]he General Assembly enacts statutes, not a general intention"; that statutes have words, which have meanings; and that "[i]t is those meanings that we interpret and apply, not some amorphous general intention").

Moreover, "we presume that statutes are enacted by the legislature with full knowledge of the existing condition of the law and with reference to it." (Citation and punctuation omitted.) *Dept. of Public Safety v. Ragsdale*, 308 Ga. 210, 213 (839 SE2d 541) (2020). And although the Taxpayer believes that without an exemption for the monies it paid to lease COAMs, it will be subjected to excessive taxation,

> [t]he courts cannot construe [OCGA § 48-8-3 (43)] to force an outcome
> that the legislature did not expressly authorize. The doctrine of
> separation of powers is an immutable constitutional principle which
> must be strictly enforced. Under that doctrine, statutory construction

13

belongs to the courts, legislation to the legislature. We can not add a line to the law. [OCGA § 48-8-3 (43)] simply does not provide [an exemption for the Taxpayer's lease payments]. In order for [an exemption to apply to such monies], the legislature would need to take action[.]

(Citations, punctuation, and footnote omitted.) *Turner v. Ga. River Network*, 297 Ga. 306, 308-309 (773 SE2d 706) (2015); see *Women's Surgical Center v. Berry*, 302 Ga. 349, 355 (2) (b) (806 SE2d 606) (2017) (noting that '[t]he Due Process Clause does not empower the judiciary to sit as a superlegislature to weigh the wisdom of legislation") (citations and punctuation omitted); *State v. Riggs*, 301 Ga. 63, 67 (2), n. 6 (799 SE2d 770) (2017) (noting that "[w]hen judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed 'spirit' or 'reason' of the legislation, . . . we venture into dangerously undemocratic, unfair, and impractical territory") (citation and punctuation omitted).

(iii) The Taxpayer contends that the superior court committed reversible error, asserting that "the record does not support its finding that the *Tax Tribunal's*

interpretation of OCGA § 48-8-3 (43) would lead to absurd results."[11] (Emphasis supplied).

The Taxpayer's claim of error is unavailing. Georgia has long recognized:

> If the words of a statute . . . are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then [the appellate court] is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then [the appellate court] must construe the statute, keeping in mind the purpose of the statute and the old law, the evil, and the remedy.

(Citations and punctuation omitted.) *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999). As relevant here, the words of the statutory provision are plain; notably, the Taxpayer makes no assertion otherwise. As explained in Division 1 (a), supra, the plain statutory language does not provide for an exemption additionally for amounts paid to lease COAMs; and "[the Taxpayer] has failed to detail how the plain-language

---

[11] The Taxpayer insists that it has never argued that the lease payments are exempt only because they stem from the COAM participation play. As the Taxpayer clarifies in its brief, it "maintain[s] that OCGA § 48-8-[3 (43)] exempts the lease payments because the lease payments are '[g]ross revenues generated from all bona fide coin operated amusement machines which . . . are in commercial use and are provided to the public for play which will require a permit fee under Chapter 27 or title 50.'" Even with this clarification, the Taxpayer's position fails. See generally Division 1 (a), supra.

15

reading is absurd or unworkable; further, the mere fact that the plain language . . . is unfavorable to [the Taxpayer] does not in and of itself render it absurd or untenable." *O'Connor v. Fulton County*, 302 Ga. 70, 73 (1) (805 SE2d 56) (2017).

2. The Taxpayer contends that the superior court erred when it reversed the Tax Tribunal's decision without finding, as required by OCGA § 50-13A-17 (g), that substantial rights of the Department had been prejudiced by that decision.

Pursuant to OCGA § 50-13A-17, which the superior court expressly cited in its order, any party may appeal a final decision of the Tax Tribunal to the Superior Court of Fulton County. See OCGA § 50-13A-17 (a), (b). Subsection (g) of that Code section provides that the superior court defers to the Tax Tribunal's factual findings; that the court may affirm the Tax Tribunals's judgment or remand the case for further proceedings; and that, in addition,

> [t]he [superior] court may reverse or modify the judgment if substantial rights of the petitioner have been prejudiced *because the tribunal judge's findings, inferences, conclusions, or judgments are: (1) In violation of* constitutional or *statutory provisions*; (2) In excess of the statutory authority of the tribunal; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

16

(Emphasis supplied.) OCGA § 50-13A-17 (g). For reasons explained above, the superior court correctly concluded that the Tax Tribunal's decision was violative of OCGA § 48-8-3 (43); hence, reversal of the Tax Tribunal's decision was authorized by OCGA § 50-13A-17 (g). This contention lacks merit.

3. The Taxpayer challenges the superior court's determinations that the record lacked proper evidence of the lease payments for the relevant period,[12] and that the Department could thus assess sales tax for the leases based on the sales price of the COAMs.

The Tax Tribunal did not reach these issues, however, as it decided that OCGA § 48-8-3 (43) exempted the Taxpayer from paying tax on its lease payments to Tiny Towne. Therefore, that portion of the contested superior court order is vacated. See OCGA § 50-13A-17 (g) (providing for the reviewing court to affirm the tax tribunal's judgment, remand the case for further proceedings, or under certain circumstances, reverse or modify the judgment; restricting the reviewing court from substituting its judgment for that of the tax tribunal's as to the weight of the evidence on questions of fact). Accord *Med. Center of Central Ga. v. Hosp. Auth.*, 340 Ga. App. 499, 507 (4) (798 SE2d 42) (2017) (summarizing the powers granted to the reviewing court by

[12] The relevant period is from May 14, 2014 to March 31, 2016.

17

OCGA § 50-13-19 (h), then reversing orders entered by the superior court when acting as a reviewing court, where the "issue [ruled upon] was outside the scope of its review of the Department's Final Decision");[13] *Commissioner of Ins. v. Stryker*, 218 Ga. App. 716, 717 (1) (463 SE2d 163) (1995) (explaining that the standard of review applicable when the superior court is reviewing an administrative decision prevents a de novo determination of evidentiary questions and leaves a determination of whether the facts found by the administrative agency were supported by any evidence) (citing OCGA § 50-13-19 (h)).

This case is thus remanded for proceedings not inconsistent with this opinion. See generally *Lathrop v. Deal*, 301 Ga. 408, 433-434 (C) (801 SE2d 867) (2017) ("A variety of claims related to the assessment and collection of state taxes may be asserted by petition to the state tax tribunal, see OCGA § 50-13A-9, and final judgments of the tax tribunal are generally subject to judicial review. See OCGA § 50-13A-17 (b).").

*Judgment affirmed in part and vacated in part. Brown and Hodges, JJ., concur.*

---

[13] OCGA § 50-13-19 (h) (providing that the reviewing court shall not substitute its judgment for that of the administrative agency as to the weight of the evidence on questions of fact, and providing further that the reviewing court may affirm the agency's decision, remand the case for further proceedings, or under certain circumstances, reverse or modify the judgment).