BENHAM, Justice.
This appeal arises from our grant of petitions for certiorari filed by appellants Judson H. Turner, the Director of the Environmental Protection Division (EPD) of the Georgia Department of Natural Resources (DNR), and the Grady County Board of Commissioners (Grady County), requesting our review of the Court of Appeals’s decision in Georgia River Network v. Turner, 328 Ga. App. 381 (762 SE2d 123) (2014). Appellees Georgia River Network and American Rivers are both non-profit organizations. The relevant facts show that in 2010, Grady County received federal approval to construct a 960-acre fishing lake.[1] The project also entailed building a large dam and inundating 129 acres of wetlands and nine miles of streams to create the lake. To proceed with the project, Grady County was required to apply for a buffer variance through the EPD in order to disturb the stream waters that would be affected by the project. Appellees challenged the variance, arguing that Grady County’s application was deficient because it failed to address buffers for the *307 wetlands that would also be affected by the project. The Director granted the variance over appellees’ objections. In a separate letter, the EPD advised appellees that wetlands did not require buffers because they generally lack wrested vegetation and were not subject to a variance request. Appellees sought review of the Director’s decision from an administrative law judge (ALJ) in the Office of State Administrative Hearings. The ALJ overturned the variance, reasoning that OCGA § 12-7-6 (b) (15) (A) of the Erosion and Sedimentation Act requires a buffer for all state waters, including wetlands. The Director and Grady County filed appeals challenging the ALJ’s decision in the superior courts of Fulton County and Grady County, respectively. On the substantive issue of the construction and interpretation of OCGA § 12-7-6 (b) (15) (A),[2] both trial courts determined that the Director’s construction of the statute was correct and that the buffer requirement only applies to state waters that have wrested vegetation. Accordingly, the trial courts reversed the judgment of the ALJ. Appellees then appealed to the Court of Appeals.
OCGA § 12-7-6 (b) (15) (A) states as follows: “There is established a 25 foot buffer along the banks of all state waters, as measured horizontally from the point where vegetation has been wrested by normal stream flow or wave action. . . .” Citing to principles of statutory construction, the Court of Appeals concluded that this buffer requirement applies to state waters[3] whether or not their banks have wrested vegetation. The Court of Appeals explained that the language regarding how the buffer is to be measured did not create an additional exception to OCGA § 12-7-6 (b) (15) (A),[4] but merely explained the location of the buffer. 328 Ga. App. at 391. In addition, the Court of Appeals reasoned that the statute was internally inconsistent and that its finding that the buffer applied to all state waters, without regard to the existence of wrested vegetation, would avoid any absurd or unintended result contrary to the legislature’s purpose in enacting the legislation. Id. at 392. Based on this analysis, the Court of Appeals found the ALJ had not erred and reversed the decisions of the trial courts. We granted certiorari to determine whether the Court of Appeals erred in its construction of *308 OCGA § 12-7-6 (b) (15) (A). Because we find that it did err, its judgment is reversed.
The cardinal rule of statutory construction requires this Court to look diligently for the intention of the General Assembly (OCGA § 1-3-1), and the golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to [e]nsure that the legislature meant something else. Absent clear evidence that a contrary meaning was intended by the legislature, we assign words in a statute their ordinary, logical, and common meanings.
(Citations and punctuation omitted.) Judicial Council of Georgia v. Brown & Gallo, LLC, 288 Ga. 294, 296-297 (702 SE2d 894) (2010). Here, the Court of Appeals erred because the literal language of the statute does not require a buffer for state waters alongside banks without wrested vegetation. The language at issue states in pertinent part: “There is established a 25 foot buffer along the banks of all state waters, as measured horizontally from the point where vegetation has been wrested. . . .” Had the legislature placed a period after the word “waters” rather than a comma and had gone no further, then there would be no other conclusion but that buffers are established along the banks of all state waters, regardless of the existence of wrested vegetation. But that is not what the legislature did. By adding the phrase “as measured horizontally from the point where vegetation has been wrested,” the General Assembly expressly defined how the buffer “is established.” Since the legislature offered no other method for the buffer to be established but for measuring it horizontally from the point of wrested vegetation, the buffer necessarily cannot be applied to state waters that are adjacent to banks without wrested vegetation. No further interpretation or analysis is required.
Our plain reading of OCGA § 12-7-6 (b) (15) (A) is in keeping with longstanding tenets of statutory construction: “expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare taciturn (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)....” See Hammock v. State, 277 Ga. 612 (3) (592 SE2d 415) (2004). The courts cannot construe OCGA § 12-7-6 (b) (15) (A) to force an outcome that the legislature did not expressly authorize. “The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to *309 the legislature. We can not add a line to the law.” (Citation and punctuation omitted.) Allen v. Wright, 282 Ga. 9 (1) (644 SE2d 814) (2007). OCGA § 12-7-6 (b) (15) (A) simply does not provide for the establishment of a buffer for state waters that are adjacent to banks without wrested vegetation.[5] In order for the buffer requirement to apply to state waters alongside banks without wrested vegetation, the legislature would need to take action to amend the statute. Accordingly, the judgment of the Court of Appeals as regards its construction of the statute is reversed.[6]

Judgment reversed.

Thompson, C. J., Hines, P. J., Hunstein and Blackwell, JJ., and Chief Judge H. Gibbs Flanders concur. Melton, J., dissents. Nahmias, J., disqualified.

 See Georgia River Network v. Turner, supra, 328 Ga. App. at 383-384 for a full recitation of the facts.

 There were also issues concerning whether the appellees had a statutory right and standing to seek review of the Director’s decision, but those issues are not before us in this appeal.

 The Court of Appeals noted that the parties did not dispute that “wetlands” fall within the statutory definition of “state waters” and stated that it would not reach that issue as it had not been fully litigated. Id. at 390, n. 4. We likewise do not address this issue on appeal.

 There are six statutory exceptions to the bufferrequirementwhichappearatOCGA § 12-7-6 (b) (15) (A) (i)-(vi). These exceptions are not at issue in this appeal.

 The dissent suggests that it would be absurd to attribute to OCGA § 12-7-6 (b) (15) (A) its plain meaning because that would leave state waters with no vegetation along their banks unprotected. The dissent is wrong in two respects. First, it appears that the principal purpose of the buffer requirement is to protect state waters in a specific way • — ■ by protecting whatever natural vegetation grows alongside state waters. See OCGA § 12-7-3 (2) (defining “buffer” as “the area of land immediately adjacent to the banks of state waters in its natural state of vegetation, which facilitates the protection of water quality and aquatic habitaf (emphasis supplied)). See also OCGA § 12-7-6 (b) (15) (B) (“a buffer shall remain in its natural, undisturbed state of vegetation until all land-disturbing activities on the construction site are completed,” and after “the final stabilization of the site is achieved, a buffer may be thinned or trimmed of vegetation as long as a protective vegetative cover remains to protect water quality and aquatic habitat and a natural canopy is left in sufficient quantity to keep shade on the stream bed”). Where there is no natural vegetation, there is nothing to preserve, and so the decision of the General Assembly to limit the buffer requirements to state waters with wrested vegetation is not absurd.
Secondly, the dissent fails to consider the fact that OCGA § 12-7-6 (b) (15) (A) is not the only means by which the EPD protects state waters both with and without wrested vegetation. The establishment of buffers for state waters alongside banks with wrested vegetation is only one of many tools or “best management practices,” available to accomplish the intent of the Erosion and Sedimentation Act as stated in OCGA § 12-7-2. See, e.g., OCGA § 12-7-6 (a) (1), 12-7-6 (b) (1)-(14). See also Manual for Erosion and Sediment Control in Georgia, Georgia Soil and Water Conservation Commission (6th ed. 2014) (manual is specifically referenced by OCGA § 12-7-6(b)).ThereisnobasisforthecourtstoextrapolatetheapplicationofOCGA § 12-7-6 (b) (15) (A) beyond its literal terms based on an incorrect assumption that state waters without wrested vegetation are left without “some level of protection” from land-disturbing activities because the establishment of a buffer is not required under one subsection of the Act. Moreover, the courts are not equipped to decide what the “best management practices” are for wetlands, trout streams, or any other state waters.

 Our review is limited to Division 3 of the Court of Appeals’s decision. We express no opinion regarding the substantive decisions made in Division 2 of the Court of Appeals’s decision.