312 Ga. 393
FINAL COPY

S21Z0781.  IN THE MATTER OF BARRY DEAN CAROTHERS.

PER CURIAM.

Barry Dean Carothers appeals the decision of the Georgia Board of Bar Examiners denying his motion for admission to the State Bar of Georgia on motion without examination. Because we agree with Carothers that the Board erred by concluding that he has not been "admitted by examination" to the bar of a reciprocal jurisdiction, we reverse the Board's decision.

1. *Background.*

Carothers was admitted to the Florida Bar by examination in 1990. He was also later admitted by motion (without examination) to the bars of Connecticut, Massachusetts, Vermont, and West Virginia. Then, in February 2020, Carothers took the Uniform Bar Examination ("UBE") in South Carolina and received a score of 267.[1]

---

[1] The UBE is a uniformly administered, graded, and scored bar

Based on that examination score and his completion of that state's other admission requirements, he was admitted to the South Carolina Bar. Carothers also applied for admission to the Alabama Bar by transferring his score on the same UBE. Because he met Alabama's UBE score requirement and completed the state's other admission requirements, he was admitted to the Alabama Bar in January 2021.

Carothers then applied to be admitted to the Georgia Bar on motion without examination based on Georgia's reciprocity with Alabama for bar admissions purposes. The Georgia Board denied his

examination that results in a score that is portable, or transferable, between the jurisdictions using the UBE. See Chart 5: Uniform Bar Examination Jurisdictions – Admission by Examination or by Transferred UBE Score, https://reports.ncbex.org/comp-guide/charts/chart-5 (hereafter "Chart 5"). The UBE includes the Multistate Essay Examination, the Multistate Performance Test ("MPT"), and the Multistate Bar Examination ("MBE"). See Understanding the Uniform Bar Examination, https://www.ncbex.org/pdfviewer/?file=%2Fdmsdocument%2F209. The UBE is used or will soon be used in 40 states and territories. See Chart 5. Each UBE jurisdiction sets its own passing score (varying from 260 to 280) and determines how long a UBE score remains eligible for transfer (varying from two years to five years). See id.

All websites referenced in this opinion were last visited on August 27, 2021.

application on February 8, 2021, on the ground he had not been "admitted by examination" to membership in the bar of a jurisdiction that has reciprocity with Georgia, citing Part C, Section 2 (b) of this Court's Rules Governing Admission to the Practice of Law ("Georgia Rules"). See *In the Matter of O'Neal*, 304 Ga. 449, 451 (819 SE2d 1) (2018) ("This Court has the inherent and exclusive power to prescribe requirements for admission to the practice of law in order to promote the State's fundamental interest in ensuring that members of the legal profession are competent.").[2] Carothers appeals that decision.

2. *The Georgia Rule for Admission on Motion.*

Part C of the Georgia Rules allows applicants to be admitted to the Georgia Bar on motion rather than by passing the Georgia bar examination if they meet certain requirements. The only requirement at issue in this case mandates that the applicant

> [h]as been admitted by examination to membership in the
> bar of the highest court of another United States

---

[2]  The Georgia Rules can be found online at https://www.gabaradmissions.org/rules-governing-admission.

jurisdiction which has reciprocity for bar admissions purposes with the State of Georgia[.]

Georgia Rules Part C, Section 2 (b).[3] It is undisputed that Carothers

---

[3] Part C, Section 2 says in full:

In order to petition the Board of Bar Examiners to be admitted without examination, an attorney licensed in a state other than Georgia must meet the following eligibility criteria. The attorney:

(a) Must meet the educational eligibility requirements established in Part B, Section 4 of these Rules, including holding a first professional degree in law (JD or LL.B) from a law school approved by the American Bar Association;

(b) Has been admitted by examination to membership in the bar of the highest court of another United States jurisdiction which has reciprocity for bar admissions purposes with the State of Georgia; provided, however, that if the former jurisdiction of the applicant permits the admission of Georgia judges and lawyers upon motion but that jurisdiction's rules are more stringent and exacting and contain other limitations, restrictions and conditions, the admission of the applicant from that jurisdiction shall be governed by the same rules that would apply to an applicant from Georgia seeking admission to the Bar in the applicant's former jurisdiction;

(c) Has never been denied certification of fitness to practice law in Georgia or any other state;

(d) Has never taken and failed the Georgia Bar Examination or the Georgia Attorneys' Examination;

(e) Has been primarily engaged in the active practice of law for five of the seven years immediately preceding the date upon which the application is filed;

(f) Is currently or resigned while in good professional standing in every jurisdiction in which the applicant has been licensed to practice law;

(g) Must receive Certification of Fitness to Practice Law in Georgia from the Board to Determine Fitness of Bar Applicants.

(h) Must state that he or she intends to engage in the

4

has been admitted to the bar of the highest court of Alabama and that Alabama is a jurisdiction which has reciprocity with Georgia for bar admissions purposes.[4] The Board contends, however, that Carothers was not "admitted by examination" to the Alabama Bar.

In considering the meaning of bar admission rules, we must afford the text its "'plain and ordinary meaning,'" view it "in the context in which it appears," and read it "in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga. 170, 172-173 (751 SE2d 337) (2013) (citation omitted). See also *City of Guyton v. Barrow*, 305 Ga. 799, 805 (828 SE2d 366) (2019) (noting that statutory interpretation principles from *Deal* "apply to all positive legal rules"). We begin with the recognition that the Uniform Bar Examination is undeniably an "examination" under the ordinary meaning of that

practice of law in Georgia.
(i) Must state that he or she has not engaged in the unauthorized practice of law in Georgia.

[4] For a list of the 42 jurisdictions with which Georgia has reciprocity, see https://www.gabaradmissions.org/appinfo.action?id=3. Georgia does not have reciprocity with Florida or South Carolina.

word. *See, e.g.,* The American Heritage Dictionary of English Language 618 (4th ed. 2000) (defining "examination" as "[a] set of questions or exercises testing knowledge or skill"). So the question is whether Carothers was "admitted by" this examination "to membership in the bar [of the reciprocal state]." Because we must determine how Carothers was admitted to the *Alabama* Bar, we must look to the Rules Governing Admission to the Alabama State Bar ("Alabama Rules").[5]

3. *The Alabama Rules.*

Applicants may be admitted to the Alabama Bar without examination and by examination. As discussed below, under the Alabama Rules, Alabama's bar examination consists of the UBE, and applicants may take the UBE in Alabama or take the examination in a different jurisdiction and transfer the score they receive. The Georgia Board argues that using a transferred examination score is more akin to being admitted without

---

[5] The Alabama Rules can be found online at https://admissions.alabar.org/rules-governing-admission.

examination, rather than by examination. But a review of the Alabama Rules refutes that argument.

(a) *Admission to the Alabama Bar Without Examination.*

Rule III of the Alabama Rules covers "Persons Entitled to Admission Without Examination." Applicants seeking admission under this rule must show, among other things, that they have been admitted to practice law in another state, territory, or the District of Columbia; that the jurisdiction where they have had their principal place of business for the practice of law or where they have been "domiciled and admitted" has reciprocity with Alabama; that they have been primarily engaged in the active practice of law for five of the last six years; that they have not taken and failed the Alabama bar exam within the last ten years; and that they are a permanent resident of Alabama or intend to conduct their primary practice of law in Alabama. See Alabama Rules, Rule III, Section A. Although these applicants must prove that they have received a score of at least 75 on the Multistate Professional Responsibility Examination ("MPRE"), there is no timing requirement as to when

7

they must have taken that ethics test. See Alabama Rules, Rule III, Section A (1) (j). Most important for our analysis, applicants for admission to the Alabama Bar without examination do not have to take the UBE, in Alabama or elsewhere.

(b) *Admission to the Alabama Bar By Examination.*

Rule IV of the Alabama Rules covers "Persons Entitled to Admission by Examination"; it says that a person who is at least 19 years old and has fulfilled certain other requirements, including education requirements, "is entitled to be examined for admission to the Alabama State Bar, at any examination held as prescribed by these Rules." Rule VI(B), which is titled "Bar Examination," then provides the rules governing the Alabama bar examination. Subsection C (6) of that rule, "Transfer of UBE Score," says in part:

> An applicant who has taken the entire UBE in a single administration in another jurisdiction and earned a total UBE scaled score of 260 or above may transfer his or her UBE score and be excused from taking the UBE in Alabama, provided that the applicant otherwise satisfies the requirements of these Rules *applicable to applicants seeking admission by examination.* The transferred UBE score will be valid for a period of no longer than 25 months after the date of administration of the UBE that resulted

in the transferred score.

(Emphasis added.) This rule plainly indicates that Alabama treats admission with a transferred UBE score as an "admission by examination," and expressly permits applicants to apply under this rule even if they do not take the UBE in Alabama.

In terms of the substantive requirements for admission by examination, both applicants seeking admission with a transferred UBE score and applicants taking the UBE in Alabama must score at least a 260 on the UBE, score at least a 75 on the MPRE within 25 months before or after taking the UBE,[6] and complete a course on Alabama law. See Alabama Rules, Rule VI(B), Sections A. (2)-(3), C. (1), E.[7]

---

[6] Applicants taking the UBE in Alabama must take the MPRE within 25 months before or after receiving a passing score on the UBE, and applicants seeking to transfer their UBE score "must successfully complete the MPRE no earlier than 25 months before the date of administration of the UBE." Alabama Rules, Rule VI(B) E.

[7] Some requirements are common to applicants without examination and by examination, such as registering as a law student or paying a non-registrant fee, see Alabama Rules, Rule I, having proof of legal education, see Rules III, Section A (1) (b), and IV, Section B (1), and being approved by the Committee on Character and Fitness, see Rule V, B. These commonalities do not affect our analysis.

(c) *Carothers's Admission to the Alabama Bar.*

As the Board points out, there are some differences in the application process within the group of applicants by examination. Applicants taking the UBE in Alabama and applicants transferring their UBE scores use different application forms. See Information & Applications, https://admissions.alabar.org/information-and-applications. Of course, how an applicant chooses to take the qualifying examination affects what information the applicant needs to provide to the Alabama Board of Bar Examiners, which has chosen to use two different forms (rather than one form with two different sections) for applicants seeking admission by examination. But this paperwork distinction (which is not in the Alabama Rules) does not support the conclusion that admission with a transferred UBE score is akin to admission without examination, particularly because applicants seeking admission without examination use a third, different form. Applicants transferring their UBE score also must pay a $300 higher application fee than those taking the UBE in Alabama. See Alabama Rules, Appendix (1)-(3), (5). And that higher fee happens to be the same amount that applicants seeking admission without examination must pay, see Alabama Rules, Appendix (4), although the fees are listed in different subsections of the Appendix.

The differences in paperwork and fees may explain why in the "Frequently Asked Questions" section of the Alabama Bar Admissions website, the answer to the question "What are the different types of admission to the Alabama State Bar?" says "Individuals may be admitted to the Alabama State Bar in three ways: (1) by examination; (2) without examination by transfer of an acceptable Uniform Bar Examination (UBE) score; and (3) without examination through reciprocity." Frequently Asked Questions, https://admissions.alabar.org/faq. However, the header on the FAQ section cautions that "[n]o information provided on this website overrides, waives, or amends the provisions of the rules and regulations." And these administrative differences do not affect the substantive requirements of the examination that Alabama uses for admission to its bar "by examination" or the fact that the transfer of UBE scores is a component of the Alabama Rule entitled "Bar Examination." Indeed, because the UBE is uniformly administered, graded, and scored, if Carothers had taken the UBE in Alabama instead of South Carolina, he would have taken the *exact same* bar examination. The Georgia Board does not suggest that it would have denied Carothers's application in that situation.

10

The application requirements set forth in Rules III, IV, and VI(B) of the Alabama Rules illustrate how different applicants prove their worthiness to be admitted as members of the Alabama Bar. Applicants seeking admission without examination establish their legal competency through their prior admission to the bar of another state, territory, or the District of Columbia and their multi-year experience in the active practice of law. Applicants transferring a UBE score or taking the UBE in Alabama, on the other hand, establish their legal competency through their performance on that bar examination. Under the Alabama Rules, applicants who are admitted to the Alabama Bar based on a transferred UBE score are "admitted by examination" just as much as those who take the UBE in Alabama, and those applicants are quite clearly *not* admitted under the rule for admission "without examination."

Neither Carothers nor the Georgia Bar contends that he met the criteria for admission to the Alabama Bar without examination. Instead, he followed the requirements for admission by examination: he took the UBE, which is the bar examination used

by Alabama; he achieved a passing score under the Alabama Rules; he timely transferred that score to Alabama; and he successfully completed the other requirements for admission by examination. Thus, under the plain language of the Alabama Rules, Carothers was "admitted by examination" to the Alabama Bar.

4. *The Board's Arguments.*

The Board argues, however, that the above analysis is flawed because "admitted by examination" as that phrase is used in Part C, Section 2 (b) of the Georgia Rules should not be construed by considering the bar admission rules of the jurisdiction where the applicant was allegedly admitted by examination. Instead, the Board argues, this phrase should be defined by looking at certain provisions governing how applicants are "admitted by examination" to the *Georgia* Bar. Part B of the Georgia Rules addresses admission requirements for people seeking to be admitted to the Georgia Bar by taking the Georgia bar examination. Based on its reading of Part B, the Board asserts that the Georgia bar examination must be administered in Georgia by Georgia officials, so for a person to be

12

"admitted by examination" to another state's bar, that person must have been admitted "by taking a bar examination *in and administered by that state*." (Emphasis added.)

The fundamental flaw in the Board's argument, however, is that the text and context of Parts B and C of the Georgia Rules make clear that they address *different* means of admission to the Georgia Bar. There are a few overlapping requirements in Parts B and C, but in those few instances, the text of Part C expressly states which sections of Part B apply. See Part C, Section 2 (a) (explaining that applicants under Part C "[m]ust meet the educational eligibility requirements established in Part B, Section 4 of these Rules"); Part C, Section 4 (c) (explaining that once applicants have been issued a Certification of Eligibility for Admission to the Practice of Law, they must "follow the procedures specified in Part B, Sections 14, 15, 16 and 17 of these Rules in order to be sworn in by a judge of the Superior Court"). So the Georgia Rules are explicit when provisions of Part B are meant to be applied to applicants under Part C. See *Turner v. Georgia River Network*, 297 Ga. 306, 308 (773 SE2d 706)

13

(2015) (noting the longstanding tenet of statutory construction that "'if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded'" (citation omitted)).

Conversely, it is clear that other provisions in Part B are not meant to apply in Part C. Part B, Section 2, for example, is entitled "Applications for Examinations" and has guidelines for when and how to file applications to take the Georgia bar examination. See, e.g., Georgia Rules, Part B, Section 2 (a) ("An application to take the February administration of the Georgia Bar Examination must be filed with the Office of Bar Admissions not later than the first Wednesday of the preceding January . . . ."). And Part B, Section 8 provides the grading requirements of the Georgia bar examination. See, e.g., Part B, Section 8 (a) ("An applicant shall have passed the Georgia Bar Examination if he or she obtains a total score of 270 on the exam."). Plainly, these procedures do not apply to applicants — like Carothers — who are not seeking to take the Georgia bar examination but who had to meet the examination application

14

deadlines and score requirements of a different jurisdiction.

Part B also provides the substantive, content requirements for the Georgia bar examination, and those rules do not govern the content requirements of bar examinations in other jurisdictions, even those with which Georgia has reciprocity. For example, Part B, Section 6 (b) says that the Georgia bar exam includes "four essay questions prepared and graded by the Board of Bar Examiners," and Section 6 (c) provides the possible topics of those Georgia-specific essays, including "Georgia Practice and Procedure."[8] This examination requirement of four essays prepared by the Georgia Board on topics drawn from a Georgia-specific list is not present in any of the examinations used by the 42 jurisdictions with which Georgia has reciprocity.

In addition, the Board reads too much into the two Part B provisions on which it relies. It argues that Part B, Section 6 (a)

---

[8] The other parts of the Georgia bar examination are the MBE and the MPT. See Georgia Rules Part B, Section 6 (b). Georgia also allows attorneys who meet certain requirements to take the "Attorneys' Examination," which is composed of the essay portion and the MPT but does not include the MBE. See Georgia Rules Part D.

requires the Georgia bar examination to be taken in Georgia. But Part B, Section 6 (a) does not actually mandate that applicants be physically present in Georgia when they take the Georgia bar examination; it says that the exam will be administered "in Atlanta *or such other location* as the Board may designate." (Emphasis added.) In fact, due to the coronavirus pandemic, the Board designated the last three Georgia bar examinations to be administered remotely, meaning that applicants could take the exam from anywhere the Internet reaches. See, e.g., July Bar Exam to be Remote, https://www.gasupreme.us/july-2021-bar-exam/. So the Board's assertion that Georgia has an inflexible in-state examination requirement for our own bar exam is incorrect.

As support for its assertion that the Georgia bar examination must be taken in Georgia and be administered by Georgia officials, the Board also relies on Part B, Section 8 (a), which says: "In determining whether an applicant has achieved 270 on the examination, the Board shall not use an MBE score from any prior examination, or an MBE score from an examination taken in any

16

other jurisdiction." However, this rule prohibiting the use of transferred MBE scores does not reflect an overarching policy against the use of any transferred scores as part of admission to the Georgia Bar by examination. For example, passage of the MPRE, which tests the applicant's knowledge and understanding related to a lawyer's professional conduct, is required for admission to the Georgia Bar by examination, see Georgia Rules Part B, Section 6 (f), and an applicant may take that ethics examination "at established test centers across the country," Bar Examination Information, https://www.gabaradmissions.org/bar-examination-information. The ethical competency of members of the Georgia Bar is no less important than their legal competency.

But the Board's over-reading of these Part B rules is really beside the point, because where to administer the Georgia bar examination and whether to use transferred scores for the Georgia bar examination are rules found in Part B about the *Georgia bar examination* — an examination that is not at issue in this case, in which Carothers seeks to be admitted to the Georgia Bar under Part

C on motion without taking the Georgia bar examination.[9]

---

[9] The dissent begins with the assertion that it is applying the same canons of construction as we do, but then declines to construe "admitted by examination" as that phrase is used in Part C based on "its plain and ordinary meaning . . . in the context in which it appears." *Deal*, 294 Ga. at 172-173. Instead, the dissent concludes that the phrase is a "term of art" referring to admission by examination "akin" to the type of examination that Georgia requires in a different context (Part B). There is nothing to support that conclusion. The phrase is not defined in the Georgia Rules or even used anywhere in Part B, nor does the dissent point to any specific and precise definition of this phrase customarily used by American bar admissions authorities. See Black's Law Dictionary (11th ed. 2019) (defining "term of art" as "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts").

Moreover, as discussed in Division 2 above, the actual phrase at issue is not just "admitted by examination" but rather "admitted by examination *to membership in the bar of the highest court of another United States jurisdiction which has reciprocity for bar admissions purposes with the State of Georgia*," which when read naturally, reasonably, and in its Part C context directs the reader to how the applicant was admitted to the bar of the *reciprocal* jurisdiction, not to the Part B rules on admission by examination to the *Georgia* Bar. And even if we mistakenly looked to Part B, the dissent, like the Board, offers no textual justification for cherry-picking particular components of the Georgia bar examination process as the ones supposedly essential for "admission by examination" to the Alabama Bar. As to the main component that the Board cites — that the Georgia bar exam must be taken in Georgia — the dissent properly acknowledges that the Georgia bar exam actually may be taken elsewhere if the Board so designates. And Alabama's bar authorities have done exactly that — the Alabama Rules expressly authorize applicants for admission by examination to the Alabama Bar to take that state's bar exam (which *is* the UBE) in other places. It may well be that more applicants seeking admission to the Alabama Bar by examination take the UBE in Alabama than outside Alabama, but that does not mean that those who take the exam outside Alabama, as the Alabama Rule on "bar examination" expressly allows, are not "admitted by examination" to that state's bar.

5. *Conclusion.*

As currently formulated, the plain language of the Georgia Rules does not require that every reciprocal jurisdiction's standards for "admission by examination" mirror Georgia's. Nor do our rules state or imply that differences, such as allowing the use of certain transferred exam scores, will render another jurisdiction's process for admission by examination invalid. In short, the rule in Part C allowing admission to the Georgia Bar *on motion* credits the examination processes of the jurisdictions with which Georgia has reciprocity, and the Board has no authority to alter or disregard that rule. See *O'Neal*, 304 Ga. at 451.[10]

---

[10] The Board appears to be troubled by Alabama's acceptance of transferred UBE scores. However, of the 42 jurisdictions with which Georgia has reciprocity, 36 jurisdictions use the UBE as a major component of their bar examinations, which means that they will accept transferred UBE scores. See Admission on Motion Without Examination, https://www.gabaradmissions.org/appinfo.action?id=3. Indeed, the whole point of the UBE is to provide "a portable score that can be transferred to other UBE jurisdictions." Chart 5. Moreover, of the six reciprocity jurisdictions not currently using the UBE, all but Pennsylvania will accept transferred MBE scores. See Chart 8: Non-Uniform Bar Examination Jurisdictions – MPRE Requirements, MBE Score Transfers, and Attorneys' Exams, https://reports.ncbex.org/comp-guide/charts/chart-8/#1610477606447-d0d0e420-5067. And Pennsylvania will begin using the UBE in July 2022. See

As made clear above, Carothers met Alabama's requirements to be "admitted by examination" to the Alabama Bar, and he thereby fulfilled the requirement in Part C, Section 2 (b) of the Georgia Rules that he be "admitted by examination" to the bar of a state with which Georgia has reciprocity for purposes of bar admissions. Accordingly, we reverse the Board's decision denying Carothers's motion for admission to the Georgia Bar without examination.

*Decision reversed. All the Justices concur, except Ellington, McMillian, and Colvin, JJ., who dissent.*

---

Chart 5.

Thus, almost all (and soon all) of the jurisdictions with which Georgia has reciprocity allow at least some kind of score transfer to be used in their bar examination process. If the Georgia rule for admission on motion was meant to exclude applicants who were admitted elsewhere based on this nearly universal score-transfer practice, the rule would presumably say so explicitly.

If the Board has concerns about the examination standards of reciprocal jurisdictions, there may be valid policy reasons for the Georgia Rules to have additional requirements for applicants seeking admission on motion without examination. But no such requirements appear in the Georgia Rules now, nor is it clear why we should be concerned about transferred UBE scores but have no concern when the exact same, widely used bar exam is physically taken in a reciprocal jurisdiction. In any event, if the Board believes that our rules should be different, it can propose that the Court amend them for future applicants.

MCMILLIAN, Justice, dissenting.

Because I believe that the Board correctly interpreted the plain text of the Georgia Rules to find that Carothers has not been admitted by examination to the bar of a reciprocal jurisdiction, I must respectfully dissent.

The majority and I agree on the same starting point for our analysis of the Georgia Rules: we apply the same canons of construction that we do for other legal texts. That is, "we must afford the [legal] text its plain and ordinary meaning, we must view the [legal] text in the context in which it appears, and we must read the [legal] text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013) (cleaned up).

But our analysis diverges after this point. At its essence, the majority's analysis focuses on the dictionary definition of "examination," looks at the Alabama Rules, and concludes that because the UBE falls under the dictionary definition of "examination" under the Alabama Rules, then Carothers was

21

admitted by examination. The fallacy of this reasoning, however, is that the majority construes the phrase "admitted by examination" in the context of Alabama's bar examination requirements. Instead, the question should be how Georgia defines "admitted by examination" in the context of its own Rules. A review of that phrase as used in the Georgia Rules shows that it is a term of art referring to admission by examination akin to the type of examination that Georgia requires.

Part C, Section 2 (b) of the Georgia Rules does not define what it means to be "admitted by examination." However, Part B, Section 6 of the Georgia Rules sets out the requirements for what Georgia considers to be an examination for persons to be admitted to the Georgia Bar. The examination consists of three parts:

> (1) four essay questions prepared and graded by the Board of Bar Examiners; (2) the Multistate Bar Examination (MBE) prepared and graded by the NCBE;[11] and (3) the Multistate Performance Test (MPT) prepared by the NCBE and graded by the Board of Bar Examiners.

---

[11] The Georgia Rules define the NCBE as the National Conference of Bar Examiners. See Part B, Section 6 (a).

Georgia Rules, Part B, Section 6 (b).[12] The examination is to be conducted twice a year in Atlanta or such other location as the Board may designate. See Georgia Rules, Part B, Section 6 (a). In order to pass the Georgia Bar Examination, an applicant must obtain a total score of 270 on the examination, and "[i]n determining whether an applicant has achieved 270 on the examination, the Board shall not use an MBE score from any prior examination, or an MBE score from an examination taken in any other jurisdiction." Georgia Rules, Part B, Section 8 (a). Thus, our Rules contemplate that in Georgia, the bar examination is to take place in the state or as designated by the Board, and scores are not permitted to be transferred from outside the jurisdiction.

The Alabama Rules provide that the academic portion of the bar examination shall consist of the UBE and notes that the

UBE is prepared by the National Conference of Bar

---

[12] The majority asserts that only certain portions of Part B apply to considering the phrase "admitted by examination," pointing as an example to the required Georgia essay questions. Of course, the requirements for the Georgia Bar Examination in Part B do not apply to Alabama or any other state, but they do shed light on what the Georgia Rules contemplate for admission by examination in our State.

Examiners and includes the Multistate Essay Examination ("the MEE"), the Multistate Performance Test ("the MPT"), and the Multistate Bar Examination ("the MBE").

Alabama Rule VI(B) A. (1). The Alabama Rules also contemplate that

> [a]n applicant who has taken the entire UBE in a single administration in another jurisdiction and earned a total UBE scaled score of 260 or above may transfer his or her UBE score *and be excused from taking the UBE in Alabama*, provided that the applicant otherwise satisfies the requirements of these Rules applicable to applicants seeking admission by examination. The transferred UBE score will be valid for a period of no longer than 25 months after the date of administration of the UBE that resulted in the transferred score.

Alabama Rule VI(B) C. (6) (emphasis added). And, at the time of the UBE transfer application, the applicant must pay a fee that is separately delineated and higher than the fee paid by applicants taking the bar examination in Alabama. See id. & Appendix. The Alabama Rules, thus, make clear that taking the UBE in Alabama is the default, admission by transferring a UBE score is distinct from taking the UBE in Alabama, and transferring a UBE score excuses an applicant from taking the UBE in Alabama, with each process

having a separate application and fee schedule.

Alabama's default, i.e., to take the UBE within Alabama, is akin to what Georgia considers to be a bar examination, as Georgia also contemplates that bar applicants take an examination administered within the state or some other place designated by the Board. And although Alabama allows the transfer of UBE scores to excuse the in-state bar examination requirement, Georgia recognizes no similar transfer. To the contrary, Georgia prohibits the transfer of MBE scores to meet its bar examination requirements. Thus, the phrase "admitted by examination" as used in the Georgia Rules does not include Alabama's process of admission by transfer of a UBE score.

Because Carothers was admitted to the Alabama bar by transfer of a UBE score, rather than by taking the bar examination within Alabama, Carothers has not fulfilled the requirement that he be admitted by examination to membership in the bar of the highest court of Alabama as required in Georgia in order to be eligible for admission without examination. See Georgia Rules, Part

25

C, Section 2 (b). Although I am sympathetic to Carothers's complaint that in substance he took the same bar examination in South Carolina that he would have taken in Alabama for the same testing period, it is incumbent on this Court to apply the plain language of the Georgia Rules within the context that it is written. I would therefore affirm the Board's denial of Carothers's admission on motion without examination.

I am authorized to state that Justice Ellington and Justice Colvin join this dissent.

Decided September 8, 2021.

Bar admission; admission by examination.

*Heidi M. Faenza, Rebecca S. Mick; Christopher M. Carr, Attorney General, Russell D. Willard, Senior Assistant Attorney General, Lee M. Stoy, Jr., Bryan K. Webb, Assistant Attorneys General*, for Office of Bar Admissions.